KATHERINE NONA STERN COHN, ET ALS. V. THE CENTRAL
NATIONAL BANK OF RICHMOND, ET ALS.

June 19, 1950.

Record No. 3665.

Present, Hudgins, C. J., and Gregory, Eggleston, Spratley, Buchanan
and Miller, JJ.

The opinion states the case.

*Hirschler & Fleischer* and *Wallerstein, Goode, Drewry & Adamson,* for the appellants.

*Wiltshire & Rives* and *Irvin D. Forman,* for the appellees.

GREGORY, J., delivered the opinion of the court.

This proceeding was instituted in the court below under Code, 1942 (Michie), section 6140a *et seq.* (now section 8-578 *et seq.* of the Code, 1950), for the purpose of having the court declare the legal effect and present status of a certain insurance trust executed by Sidney L. Stern on the one part and the Central National Bank, trustee, on the other.

Stern made an agreement on November 29, 1943, whereby he caused to be delivered to the bank, trustee, thirteen policies of life insurance on his life, aggregating $79,500. The trustee agreed to hold in trust the policies and proceeds upon certain conditions, and to pay the proceeds to

the wife of Stern and their children and lawful issue according to the conditions set out in the agreement. In general it provided that upon the death of Stern the income from the trust fund should be paid to his wife during her lifetime, and upon her death the corpus was to be divided among the living children and lawful issue of any deceased children upon their reaching certain ages.

Article XI of the trust agreement is as follows: "The right is reserved to the insured, by written instrument delivered to the trustee, to revoke and annul this agreement either in whole or in part, and to modify the terms in any respect, except so far as said terms relate to the duties, responsibilities, and compensation of the trustee, which shall not be changed without the consent of the trustee. On the written demand of the insured, the trustee shall deliver to him any or all of the policies held under the terms of this agreement. If this agreement be revoked by the insured, he shall pay to the Central National Bank of Richmond, as trustee hereunder, a revocation fee of one-tenth (1/10) of one (1) per cent of the face value of the policies subject to this agreement."

At the time that the trust agreement was executed Stern also executed his will bearing date on November 29, 1943, disposing of the balance of his estate, and the co-executors named in this will were a son, a son-in-law, and The Central National Bank.

On May 15, 1948, Stern executed his last will and testament, which expressly revoked the will of November 29, 1943, and sought to revoke the insurance trust agreement. The first paragraph of this will is as follows: "I, Sidney L. Stern, of the City of Richmond, Virginia, being of sound and disposing mind, do hereby make, publish and declare this to be my last will and testament, hereby revoking all wills, or codicils thereto, heretofore made, and also revoking an insurance trust agreement dated November 29, 1943, and all extensions, amendments, or modifications thereto, heretofore entered into between myself and The Central

National Bank of Richmond, Richmond, Virginia. I direct that upon my death a copy of this will revoking said insurance trust agreement be delivered to The Central National Bank of Richmond, Richmond, Virginia, as evidence of my written revocation of said agreement in its entirety and that my executors and trustees pay said bank the revocation fee provided for in case of revocation."

The co-executors named in the last will were a son, and a son-in-law of the testator. The Central National Bank was not named and it had no knowledge of this will until after the death of the testator. He died on June 26, 1948, survived by his wife, two daughters and a son, who are beneficiaries named in both the insurance trust agreement and in the last will and testament which was duly probated on June 30, 1948. There are two infant grandchildren of Stern who are the children of one of the married daughters. Later the executors under the will delivered a copy of it to the trustee and made demand that the net proceeds and corpus of the insurance trust be turned over to them. This the trustee refused to do on the ground that the will of Stern and the delivery of a copy thereof to the trustee after his death did not effect a proper revocation of the insurance trust in accordance with Article XI thereof, and the trustee maintained that the trust was still in force and effect.

The widow and the three surviving children of Stern, together with the executors under the last will have joined as parties complainant, and have made the trustee and the two infant grandchildren of Stern defendants for the purpose of the declaratory judgment proceeding.

The facts narrated are taken from the pleadings filed in the case, a stipulation of facts and the exhibits. No evidence was presented.

The sole question to be determined is whether or not Stern, the settlor of the trust, by making his last will in which the trust agreement was expressly revoked, has effectually done so. It must be borne in mind that Stern

gave no notice of any kind to the trustee of the purported revocation of the trust agreement prior to his death. So the real question is, does the will revoke the insurance trust agreement?

In the court below it was contended that the trust agreement was testamentary in its character; that the legal title to the insurance policies remained in the settlor; that he retained the right to change the beneficiary and to exercise all the privileges respecting the policies; that the bank was a mere custodian and bailee of the policies during the lifetime of Stern and would not become a trustee of anything until his death and the collection of the proceeds of the insurance. In this court those positions are not only not urged but have been abandoned.

Our sole duty is to define and interpret the meaning of Article XI of the trust agreement. What did the settlor of the trust mean by the language he used when he provided, "The right is reserved to the insured, by written instrument delivered to the trustee, to revoke and annul this agreement * * *. On the written demand of the insured the trustee shall deliver to him any or all of the policies held under the terms of this agreement. * * *"?

[1] The language "the right is reserved to the insured, by written instrument" to revoke, means that the insured, only by written instrument, could revoke. Likewise, the latter sentence "on the written demand of the insured the trustee shall deliver, &c.", means that the demand must be made by the insured. The whole of Article XI carries with it the thought that whatever is done to effect a revocation must be done in the lifetime of the settlor, and must be done by him. This appears to be implicit in the article. The will could not have revoked the trust prior to testator's death. No notice of it was given the trustee until after his death. Before that time the will itself could have been revoked by the testator in the event he desired to make a new one. It could become operative only at his

death. Article XI did not contemplate revocation after the settlor's death.

The language of the article is clear and the intention is plain. We must give effect to the words used. There is an absence of any language in the article which would authorize the revocation of the trust agreement by a will, or from which an inference to that effect could be drawn. The settlor reserved the right to revoke the trust by notice in writing to the trustee. Revocation could only become effective through that means. From the first paragraph of the will the intention of the testator to revoke the trust was clear. No doubt he intended to revoke it, but to effectually revoke the trust the testator's intention alone was not sufficient. The revocation could only take place in accordance with Article XI of the trust agreement.

The court wrote a comprehensive opinion, holding that the revocation could not be made by will, and that the insurance trust agreement was still in force and effect. Very elaborate briefs have been filed and many cases cited and discussed therein. A number of text writers have written on the subject, to which reference has also been made.

Restatement of Trusts, section 330, comment "i", provides: "If the settlor reserves a power to revoke the trust but does not specify any mode of revocation, the power can be exercised in any manner which sufficiently manifests the intention of the settlor to revoke the trust."

And again, in section 330 of this same volume, comment "j", this is written "* * * If the settlor reserves a power to revoke the trust, it is a question of interpretation to be determined in view of the language used and all the circumstances whether the settlor manifested an intention to reserve a power to revoke by will as well as by an act *inter vivos*.

"If the settlor reserves a power to revoke the trust by a transaction *inter vivos*, as, for example, by a notice to the trustee, he cannot revoke the trust by his will.

"If the settlor reserves a power to revoke the trust only by will, he cannot revoke it by a transaction *inter vivos*.

"If the settlor reserves a power to revoke the trust by will, it is a question of interpretation whether the will of the settlor exercises the power. Ordinarily the power is not exercised by a general residuary clause disposing of all the residue of the property of the settlor or all the property over which he has a power of appointment.

"If the settlor reserves a power to revoke the trust only by a notice in writing delivered to the trustee, he can revoke it only by delivering such a notice to the trustee. It is ordinarily a sufficient delivery, however, if the notice is mailed to the trustee, although it is not received by him until after the settlor's death.

"If the settlor reserves power to revoke the trust only to the extent to which he may need the property for his support, he cannot revoke the trust except for that purpose and to that extent."

Bogert on Trusts, section 996, states the rule thus: "A power to revoke or alter a trust must be executed in accordance with its terms. If it is a power to revoke by deed, it cannot be exercised by an undelivered deed; if a power to revoke by deed witnessed, neither an assignment nor a will are sufficient; if the instrument provides for a revocation by deed, there is clearly no power to destroy the trust by will; if the power is to cancel the trust by will, a deed will have no effect; if by written notice to the trustee, a return of the trust instrument by the trustee to the settlor at the latter's request will not revoke; if by two settlors acting jointly, one alone cannot revoke; if by the settlor and trustee, the former cannot act alone; if by the joint action of the trustee and the cestui, the cestui is powerless to revoke by his several acts."

In 54 Am. Jur., Trusts, sec. 77, is found a clear statement of the general rule. It reads thus: "It is a general rule that where a valid and effective voluntary trust has been created, and no power of revocation has been reserved, it cannot

be revoked by the settlor without the consent of the cestui que trust. The revocation cannot be effected by a reconveyance from the trustee, by cancellation and surrender of the trust deed or instrument, or by subsequent annexations to it of special terms and qualifications. This does not mean, however, that a grantor may not revoke a trust deed where he is the sole beneficiary of the trust, and no other person has any present interest in the estate, contingent or otherwise, or that he may not revoke a trust as to his own life interest therein.

"While, without question, the settlor of a trust may revoke the trust where power of revocation is validly reserved, if a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective. Where the right to revoke is reserved and no particular mode is specified, any mode sufficiently manifesting an intention of the trustor to revoke is effective. Revocation may be effected by a devise of the corpus of the trust by a will if duly executed. Whether a will impliedly revokes a revocable trust is a question of intention."

There is no Virginia case so far as we know which has any bearing on the question here. There are many cases from other jurisdictions in which the courts have had occasion to express themselves on how trust agreements may be revoked. Among them is the Massachusetts case of *Kelley* v. *Snow*, 185 Mass. 288, 70 N. E. 89. This case has been cited in many of the texts and the opinions in other cases and is a leading one. It is well reasoned and very nearly in point. There the maker of the trust reserved the power to change the disposition thereof, "at any time, upon written notice to the trustee". Several years later she made a will reciting the existence of the trust and sought to revoke it. She wrote, "I do now cancel this disposition and revoke the same, and in place thereof substitute the following bequests". The trustee was given no notice of the will during her lifetime. The court

held that while she had the power to change the terms of the trust, the exercise of that power was conditioned upon giving written notice to Kelley. The court said, "This condition, especially when taken in connection with the entire absence of any express power by will, shows that the power was to be exercised and the changes were to take effect in her lifetime and not by way of a will." The court declared the trust still in existence as originally created.

In *Dickerson's Appeal*, 115 Pa. 198, 8 A. 64, 2 Am. St. Rep. 547, power was reserved by the maker of the trust to revoke it. In his will he attempted to qualify the terms of the trust, and the court held that his will did not suffice for that purpose. The court said, "If the right is not exercised during the lifetime of the donor and according to the terms in which it is reserved, the validity of the trust remains unaffected."

*In re Shapley*, 353 Pa. 499, 46 A. (2d) 227, 164 A. L. R. 877, the maker of the trust reserved the right to revoke by a "proper instrument in writing executed by me and lodged with the trustee." Nine years later he made a will, making a different disposition of the estate, but he did not in the will expressly revoke the trust. The court held that lodging a certified copy of the probated will by the executor of the estate was not a compliance with the revocation paragraph in the deed.

In *Chase Nat. Bank* v. *Tomagno*, 172 Misc. 63, 14 N. Y. S. (2d) 759, it was held that a subsequent will did not revoke a prior trust agreement, notwithstanding there was reserved in the trust agreement the right to revoke, by filing with the trustee, a written notice of revocation. The court was of opinion that in such circumstances the settlor intended that the power should be exercised only during her lifetime.

There are a number of other cases along this line which need only to be cited. Among them, *Stone* v. *Hackett*, 12 Gray (78 Mass.) 227; *Mayer* v. *Tucker*, 102 N. J. Eq.

524, 141 A. 799; *Union Trust Co.* v. *Watson* (R. I.), 68 A. (2d) 916, and *Gall* v. *Union Nat. Bank*, 203 Ark. 1000, 159 S. W. (2d) 757.

In *Bottimore* v. *First, etc., Nat. Bank*, 170 Va. 221, 196 S. E. 593, we held that an *inter vivos* trust cannot be revoked by the maker unless he has reserved the right so to do in the trust instrument, but, if all of the beneficiaries are *sui juris*, and consent, it may be revoked. The opinion in that case states the general principles applicable there but they do not touch the question that we must decide in the case at bar. There were no beneficiaries in the *Bottimore Case* who were not *sui juris*. The trustor was the sole beneficiary, and we held that she could revoke the trust, notwithstanding the agreement which declared it irrevocable.

It is insisted here that all the adult beneficiaries have approved the attempt of the trustor to revoke the trust by his will and this should bring the case under the influence of the *Bottimore Case*. But persons who are not *sui juris* are involved, and they have a contingent interest and cannot consent to the revocation. They were made parties defendant to the bill, and by an answer of their guardian *ad litem* they have confessed their inability to protect their interests in this litigation and have submitted them to the protection of the court. For these reasons the principles of the *Bottimore Case* do not apply.

The other Virginia cases relied upon by the appellants have no particular bearing here. They were decided upon facts not similar to those of the instant case.

*Hackley Union Nat. Bank* v. *Farmer*, 252 Mich. 674, 234 N. W. 135, is relied upon. There, the revocation clause of the trust agreement was in this language: "Notwithstanding the provisions of the preceding paragraphs, this instrument and all and singular the trusts created hereby, may be revoked by the donor at any time during his lifetime, by instrument in writing signed and acknowledged by the donor and delivered to the trustee." The maker

of the trust went to Germany, and just before his death he executed a will and an additional instrument purporting to be a revocation of the trust agreement. It was signed and acknowledged, and a certified copy was mailed to the trustee, together with a letter from the donor, stating that he had revoked the trust in its entirety. These papers were not received by the trustee until after the donor's death. The question was whether or not the revocation met the requirements of the revocation clause in the trust agreement. The court held that it did and that the trust was revoked. The trial court, in its opinion, distinguishes the *Hackley Case* from the one at bar in this language: "The *Hackley Case* is distinguishable from the case at bar in several important particulars. First; the revocation was not attempted by a will, but by an instrument executed in exact conformity with the requirements of the trust agreement, i. e. signed and acknowledged. Second; the nature of the instrument and the manner of execution before a notary under the German law, made the original instrument, which must be retained by the notary, an official paper, thus giving it all the characteristics of an executed *inter vivos* act in *praesenti*. Third; the mailing of the letter and accompanying copy of the revoking instrument, placed it beyond the control of the settlor, and was an unequivocal overt act evidencing his intent; unlike the making of a will which is not a publicized act in fact, and which does not speak until the death of the maker as a matter of law, its inchoate characteristics being revocable by nature during the testator's lifetime."

In the foregoing statement of the trial court we concur. There is little doubt but that the majority rule and the weight of authority in the United States is to the effect that the maker of a trust who has reserved the right to revoke it by giving a written notice to the trustee cannot revoke it by his last will. The Restatement of Trusts, comment "j", section 330(1) is controlling. "If the settlor reserves a power to revoke the trust by a transaction *inter*

*vivos*, as, for example, by a notice to the trustee, he cannot revoke the trust by his will."

We are of opinion that the trust agreement was not revoked by the last will and testament of the settlor and a delivery of a copy thereof to the bank after his death.

■ The court is of opinion that there was reasonable basis for the bank to dispute the revocation of the trust in this case, and the acts of the trustee in securing legal advice and in defending this suit were reasonable and therefore it is entitled to charge the trust estate with a reasonable fee, to be fixed by the trial court, for the services of counsel in the premises.

The decree of the trial court is accordingly affirmed.

*Affirmed.*