# CIRCUIT COURT OF THE CITY OF NORFOLK

Joan D. Martone

v.

Peter W. Martone

July 23, 1997

Case No. (Chancery) C95-1315

BY JUDGE CHARLES E. POSTON

In this case, Joan D. Martone seeks a declaratory judgment that the trust agreement executed by her husband, Dr. Alexander L. Martone, on April 10, 1991, was validly revoked by Dr. Martone on December 21, 1994; a power of attorney given by Dr. Martone to Peter W. Martone, as attorney-in-fact, on April 10, 1991, was also revoked by Dr. Martone; and certain actions taken by Peter Martone, purporting to act as attorney-in-fact for Dr. Martone, including actions purporting to transfer Dr. Martone's property to the 1991 Trust, are ineffective and void. The case is currently before the Court on a Motion for Summary Judgment filed by Joan Martone. Rule 2:21 of the Rules of the Supreme Court of Virginia provides, in pertinent part:

> [E]ither party may make a motion for summary judgment at any time after the parties at issue. If it appears from the pleadings ... [or] the admissions, if any, in the proceedings ... that the moving party is entitled to judgment, the court shall enter judgment in his favor ... Summary judgment shall not be entered if any material fact is genuinely in dispute.

As this rule makes clear, summary judgment is appropriate only when there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Renner v. Stafford*, 245 Va. 351, 353 (1993). In ruling on a motion for summary judgment, the court must view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Renner*, 245 Va. at 353. Summary judgment must be denied if, based on all the evidence, reasonable minds could differ as to the outcome of the case. *Richmond, F. & P. R. Co. v. Sutton Co.*, 218 Va. 636, 643 (1977); *Smith v. New Dixie Lines*, 201 Va. 466, 471 (1959).

The Plaintiff argues that summary judgment is appropriate on the following grounds.

I. *The level of competency or mental capacity required for Dr. Martone to make a valid revocation of the 1991 testamentary documents and power of attorney was the same mental capacity as is required to make a valid will, or at most, the mental capacity to understand the nature of the transactions and assent to their provisions.*

In a decree entered on May 9, 1997, this Court ordered the parties to submit memoranda of law on the following agreed issue:

> Because the will, trust, and power of attorney given by Alexander L. Martone, deceased, to Peter Martone were all components of one estate plan, what level of competency was required for Alexander L. Martone, deceased, to revoke the power of attorney and to discharge the trustee?

It is clear that the required mental capacity needed to revoke the 1991 will is that of testamentary capacity. A testator is deemed to have testamentary capacity if he understands the nature of the business in which he is engaged, has a recollection of the property which he means to dispose of, knows the objects of his bounty, and knows the manner in which he wishes to distribute his property among them. *See, e.g., Porter v. Porter*, 89 Va. 118 (1892).

The more difficult issue concerns what capacity Dr. Martone needed to possess in order to revoke the 1991 trust and power of attorney. The Plaintiff contends that because the 1991 trust, the 1991 will, and the 1991 power of attorney were all executed by Dr. Martone as parts of a comprehensive estate plan and because the primary use of the revocable 1991 trust was as a device for disposing of property at death, the testamentary capacity standard used for

wills should also be applied to the revocation of these documents.[1] The Plaintiff cites the current draft of the Restatement (Third) of Trusts § 11, comment b (Tentative Draft No. 1, April 5, 1996), a draft of the Uniform Trust Act § 3-101 comment (National Conf. of Comm'rs on Unif. State Laws, Draft, October 21, 1996), and *Greer v. Greers*, 50 Va. (9 Gratt.) 330, 332 (1852) (capacity standard for deed intended as testamentary disposition of property should be same as that applicable to wills), in support of her position.

With a revocable inter vivos trust, the settlor may reserve a power to revoke the trust by a transaction inter vivos; however, it is unclear what capacity the settlor must possess in order to exercise this power. The Court has been unable to find any Virginia Supreme Court cases addressing the issue of capacity to revoke a trust. Generally, an individual has capacity to *create* a trust to the same extent that the individual had the capacity to transfer property inter vivos free of trust. *See* Restatement (Second) of Trusts, § 19; 76 Am. Jur. 2d, *Trusts*, § 55 at 84; *see also, Hoyle v. Dickinson*, 746 P.2d 18 (Ariz. App. 1987); *Re Estate of Stokes*, 747 P.2d 300 (Okla. 1987); *Waesche v. Rizzuto*, 168 A.2d 871 (Md. 1961). Thus, a valid trust can be created only where the trustor or settlor has the legal competence to make a contract and to make a disposition of the legal title to his property. *See* Am. Jur. 2d, *Trusts*, § 55 at 84; *see also, Reid v. Barry*, 112 So. 847 (Fla. 1927); *Schumann-Heink v. Folsom*, 159 N.E. 250 (Ill. 1927). This is important because in dealing with documents such as wills and deeds, courts generally apply the same standards to determine competency to *create* the legal relationship as they do for competency to *revoke* the legal relationship. The few reported court decisions to address capacity to *revoke* a trust generally hold that a trustor merely needs to have the capacity to understand the nature of the transaction. *See Freeman v. Lane*, 504 So. 2d 1297 (Fla. App. Dist. 5, 1987) (holding that despite testimony that trustor was suffering from cerebral-vascular disease, hardening of the brain arteries, and was confused and disoriented at the time of her last hospital discharge, she nonetheless had the capacity to understand the nature of the transaction when she revoked her trust, based on lack of competent, substantial evidence to the contrary). Generally, the mental capacity of a maker of a trust is presumed and the burden rests on the contestants to prove incapacity by a preponderance of the evidence. *See Rose v. Dunn*, 679 S.W.2d 180 (Ark. 1984).

---

[1] Although the parties were ordered by the Court to submit memoranda of law regarding the level of competency or mental capacity required for Dr. Martone to revoke the 1991 trust and the power of attorney, the Defendants failed to address this issue in their Brief in Opposition.

With a power of attorney, since this is an agency relationship and an agency is formed by contract, the mental capacity needed to enter into or revoke an agency is the same as that required to make a valid contract: the capacity to understand the nature and consequences of the transaction. *Lohman v. Sherwood*, 181 Va. 594, 607 (1943).

The Court concludes that the level of competency required for Dr. Martone to revoke the power of attorney and discharge the trustee is that of contractual capacity: the capacity to understand the nature and consequences of the transition.

II. *It is res judicata that the 1991 will was duly revoked on March 3, 1995 (if not sooner) by the valid last will and testament of Alexander L. Martone executed on that date.*

In Probate No. 585-96, it was determined that the 1995 will executed by Dr. Martone was his valid last will and testament. The Plaintiff contends that because the 1995 will revoked the 1991 will, the Defendants are precluded from litigating any issue regarding the validity of the 1991 will. The Plaintiff further argues that because the "pourover" clause of the 1991 will was revoked, even assuming that the April 1991 trust still existed at the time of Dr. Martone's death, the Defendants would still be precluded from contending that any property is subject to the provisions of the trust unless it can be shown that the property was transferred to the trust in a valid lifetime conveyance. The Plaintiff asserts that the only property so transferred and thus the only property upon which the Trust, if not revoked, could operate is the $20.00 transferred by Dr. Martone himself.

The doctrine of collateral estoppel precludes parties to a prior action and their privies from litigating in a subsequent action any factual issue that actually was litigated and was essential to a valid, final judgment in the prior action. *Glasco v. Ballard*, 249 Va. 61, 64 (1995). In Probate No. 585-96, it was determined in a valid final judgment entered by this Court that the 1995 will executed by Dr. Martone was his valid last will and testament. Thus, the Plaintiff is correct that the 1995 will revoked the entire 1991 will, including its "pourover clause." Since the pourover clause was revoked, this provision of the 1991 will was no longer of any legal effect at the time of Dr. Martone's death. Thus, no assets could have "poured over" from Dr. Martone's estate into the 1991 trust by virtue of the 1991 pourover clause provision. As a result, the Defendants are precluded from contending that any property was transferred to the trust by virtue of the pourover clause of the 1991 will.

Summary judgment is granted as to the issue of revocation of the 1991 will.

**III.** *Revocation of the 1991 will effected a revocation of the unfunded 1991 trust if it had not been previously revoked, because the revocation of the 1991 will was intended as a revocation of Dr. Martone's entire 1991 estate plan, including the April 1991 will and the "pourover clause" of article IV of this will.*

The Plaintiff contends that the 1991 trust was an essential and integral part, indeed the principal vehicle, of Dr. Martone's testamentary plan and that, therefore, if the trust was not previously revoked, it was effectively revoked by Dr. Martone's execution of the 1995 will, which constituted his entire revised testamentary plan. The Plaintiff concedes that there is no Virginia case directly addressing whether a revocable trust, testamentary in nature and funded by its settlor with only a nominal amount, may be revoked by execution of another testamentary instrument which is incompatible with the testamentary plan set forth in the revocable trust. However, the Plaintiff argues that because trusts are now used primarily as "will complements," the law of trusts now recognizes that a will may revoke, by necessary implication and exclusion, a revocable trust that had earlier been created. The Plaintiff cites a draft of the Uniform Trust Act in support of her position. *See* Uniform Trust Act § 3-102(c)(2) and comment (National Conference of Comm'rs on Unif. State Laws, Draft, October 21, 1996).

Article X(b) of the 1991 trust provides, in pertinent part:

> I reserve the right to remove any Trustee, to appoint a successor Trustee, to appoint one or more additional Trustees, to withdraw any assets held hereunder by the Trustee, and to amend, modify, or revoke this agreement, in whole or in part, at any time or times, by an instrument or notice in writing signed by me and delivered to any Trustee, and such removal, amendment, modification, or revocation shall be effective at the time stated in such writing or, if no time is stated therein, immediately upon delivery of such writing to the Trustee ... .

Article X(b), 1991 trust agreement; *see* Memo in Support of Plaintiff's Motion for Summary Judgment, Exhibit 2, at 9.

In *Cohn v. Central National Bank of Richmond*, 191 Va. 12 (1950), the Trust Agreement at issue provided:

The right is reserved to the insured, by written instrument delivered to the trustee, to revoke and annul this agreement either in whole or in part, and to modify the terms in any respect, except so far as said terms relate to the duties, responsibilities, and compensation of the trustee, which shall not be changed without the consent of the trustee.

*Cohn*, 191 Va. at 14.

The revocation language in Dr. Martone's trust agreement and the trust agreement in *Cohn* are essentially the same. Both provide that the settlor of the trust may revoke by written instrument or notice delivered to the trustee. In *Cohn*, the court addressed the question of whether the settlor's will effectively revoked the trust agreement. The court in *Cohn* found the language of revocation in the trust to be clear and its intention plain and saw in this language an absence of any indication that revocation was to be authorized by will. The court concluded that, in reserving the right to revoke the trust by notice in writing to the trustee, the settlor limited himself to revocation by that means. The court in *Cohn* explained:

The whole of Article XI carries with it the thought that whatever is done to effect a revocation must be done in the lifetime of the settlor and must be done by him. This appears to be implicit in the article. The will could not have revoked the trust prior to testator's death. No notice of it was given the trustee until after his death. Before that time the will itself could have been revoked by the testator in the event he desired to make a new one. It could become operative only at his death. Article XI did not contemplate revocation after the settlor's death.

*Cohn*, 191 Va. at 16-17.

*Cohn* went on to cite secondary authority for the proposition that when a settlor reserve the power to revoke a trust by some specified, inter vivos means, such as notice to the trustee, he cannot revoke the trust by will. For example, the Restatement of Trusts, section 330, comment "j," provides that "[i]f the settlor reserves a power to revoke the trust by a transaction inter vivos, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." *Cohn*, 191 Va. at 17; *see also*, Bogert on Trusts, section 996 (stating that "[a] power to revoke or alter a trust must be executed in accordance with its terms."). In 54 Am. Jur., *Trusts*, § 77, it is stated that "while, without question, the settlor of a trust may revoke the trust where power of revocation

is validly reserved, if a particular mode of revocation is specified, it is essential that the mode specified be strictly followed in order to make the revocation effective." *Cohn*, 191 Va. at 19. While *Cohn* acknowledged that there were no Virginia cases on point, the court did note the many cases from other jurisdictions voicing agreement with the above principles. *See, e.g., In re Shapely*, 46 A.2d 227 (Pa. 1946); *Kelley v. Snow*, 70 N.E. 89 (Mass. 1904); *Dickerson's Appeal*, 8 A. 64 (Pa. 1887); *Chase Nat. Bank v. Tomango*, 172 Misc. 63, 14 N.Y.S.2d 759 (1939). After reviewing these authorities, the court in *Cohn* concluded:

> There is little doubt but that the majority rule and the weight of authority in the United States is to the effect that the maker of a trust who has reserved the right to revoke it by giving a written notice to the trustee cannot revoke it by his last will. The Restatement of Trusts, comment "j," section 330(1) is controlling. If the settlor reserves a power to revoke the trust by a transaction *inter vivos*, as, for example, by a notice of the trustee, he cannot revoke the trust by his will.

*Cohn*, 191 Va. at 22-23.

Here, Dr. Martone's Trust Agreement clearly indicated the means of revocation "by an instrument or notice in writing signed by me and delivered to the Trustee." Nowhere does the Trust indicate that it could be revoked by will or any other means not involving the delivery of a signed instrument to the Trustee. Like *Cohn*, this case is controlled by the principle of Section 330, comment j, of the Restatement of Trusts that "[i]f the settlor reserves a power to revoke the trust by ... notice to the trustee, he cannot revoke the trust by his will." The Plaintiff's attempts to distinguish *Cohn* are unconvincing. First, the Plaintiff contends that the present case is distinguishable because Dr. Martone's trust was only funded with $20.00 while the trust in *Cohn* was fully funded. However, nothing in the *Cohn* opinion indicates that this factor had any bearing on the court's decision, and the Plaintiff has failed to cite any authority emphasizing the importance of this factor. Second, the Plaintiff attempts to distinguish *Cohn* on the ground that Dr. Martone's will and trust constituted one interrelated estate plan, rather than making separate provisions regarding different portions of the estate. However, the Defendants are correct that even if it could be assumed that the 1995 will expressed an intent to revoke the trust, this factor is irrelevant as the will at issue in *Cohn* explicitly indicated an intent to revoke the trust but was nonetheless found ineffective. The Plaintiff fails to cite a single case suggesting that a different result should

be reached when the trust and the will constitute one interrelated estate plan. The draft of the Uniform Trust Act cited by the Plaintiff is not the law in Virginia.

Summary judgment as to this issue is denied.

*IV. The April 1991 trust was validly revoked by Dr. Martone and Peter Martone removed as trustee during his lifetime by his exercise of the power reserved to him in Article X(B) of the trust no later than November 21, 1994.*

The settlor of a trust has the power to revoke the trust if and to the extent that by the terms of the trust he reserved such a power. *Restatement (Second) of Trusts* § 330(1) (1959). Dr. Martone was both settlor of the 1991 trust and, with Peter Martone, a trustee. In Article X(b) of the trust, Dr. Martone, as settlor, stipulated:

> I reserve the right ... to amend, modify, or revoke this agreement, in whole or in part, at any time or times, by an instrument or notice in writing signed by me and delivered to any Trustee, and such ... revocation shall be effective at the time stated in such writing, or, if no time is stated therein, immediately upon delivery of such writing to the trustee.

Because the trust merely required Dr. Martone to give notice "to *any* trustee," upon revocation, the Plaintiff argues that Dr. Martone could have revoked the trust without any notice to his co-trustee Peter Martone. All Dr. Martone needed to do to revoke the trust, the Plaintiff contends, was manifest his intention by some communication to a third party. The Plaintiff asserts that Dr. Martone manifested this intention to revoke many times, in communications including his letters to Peter Martone of August 26, 1994, November 21, 1994, and December 2, 1994, as well as in a formal written notice to Peter Martone dated December 21, 1994.

Regarding the communications from Dr. Martone to Peter Martone prior to December 21, 1994, material facts are in dispute as to whether Dr. Martone evidenced an intention to revoke in any of these letters. *See* Defendants' Brief in Opposition, at 1-2, n. 1. However, the letter dated December 21, 1994, does clearly evidence Dr. Martone's intent to revoke both the 1991 Trust Agreement and the 1991 Power of Attorney. *See* Plaintiff's Memo in Support of Summary Judgment, Exhibit 10. Indeed, this letter could not have any more clearly evidenced this intent to revoke. Moreover, the Defendants do not dispute that the co-Trustee, Peter Martone, received the December 21, 1994,

letter. As Dr. Martone reserved the right to revoke in Article X(b) of the trust "by an instrument in writing signed by me and delivered to any trustee," this revocation of the trust was effective at the time stated in the letter, November 21, 1994, unless Dr. Martone for some reason was incompetent to exercise this reserved power of revocation.

The Defendants cannot rely on undue influence as a ground upon which the express revocation of the Trust might be held ineffective, as "the principle of undue influence has no place in determining whether a competent settlor can revoke a revocable trust." *Florida Nat'l Bank v. Genova*, 460 So. 2d 895, 896 (Fla. 1984); *see* 76 Am. Jur. 2d, *Trusts*, § 99 (1992). However, regarding the issue of whether Dr. Martone possessed the necessary mental capacity to exercise his power under Article X(b) to revoke the trust, there are material facts in dispute. The Defendants, in responding to the Plaintiff's argument that the jury's findings in the probate action decide the present action, state that: "[n]or do the jury's findings about Dr. Martone's condition at the time he executed the March 1995 will preclude the children from introducing evidence to establish that he was incompetent or was acting under undue influence in late 1994." Defendants' Brief in Opposition at 2. This indicates that the Defendants intend to argue that Dr. Martone was incompetent at the time he attempted to revoke the trust and power of attorney in December of 1994. The material fact of Dr. Martone's competency at the time he attempted to revoke the trust is therefore in dispute, and summary judgment is not appropriate.

## V. *Dr. Martone effectively revoked the power of attorney he had given to Peter Martone no later than November 21, 1994.*

The Plaintiff contends that the letters of Dr. Martone to Peter Martone of November 21, 1994, and December 2, 1994, revoked the power of attorney granted to Peter Martone.

A power of attorney is a written instrument by which one person appoints another as his agent or attorney-in-fact and confers upon him authority to perform certain specified acts. *See* Michie's Jurisprudence, *Powers*, § 3, at 314; *see also, Kanawha Valley Bank v. Friend*, 162 W. Va. 925, 253 S.E.2d 528 (1979); *Milner v. Milner*, 183 W. Va. 273, 395 S.E.2d 517 (1990). Generally, it is held that a power of attorney creates an agency and this establishes the fiduciary relationship which exists between a principal and agent. *See id.* Ordinarily, any person having capacity to appoint an agent has capacity to create a power of attorney. 3 Am. Jur. 2d, *Agency*, § 24 at 529.

As between an agent and a principal, the authority of the agent may be revoked by the principal at his will at any time, except where the authority is coupled with an interest in the agent. 3 Am. Jur. 2d, *Agency*, § 43 at 544. Moreover, a power of attorney constituting a mere agency, as when it concerns the interest of the principal alone, may be revoked at any time, with or without cause. 3 Am. Jur. 2d, § 43 at 546. The principal may always exercise the power to revoke the agent's authority and terminate the agency by expressly notifying the agent to this effect, and such notice may generally be either oral or written. 3 Am. Jur. 2d, § 45 at 548.

In the present case, Dr. Martone wrote letters to Peter Martone dated November 21, 1994, and December 2, 1994. The November 1994 letter states the following:

> You [Peter Martone] immediately took control of the following issues, my Trust Agreement, my Will, and the Power of Attorney and many other issues. I have repeatedly insisted that you give up control of these issues and let me control them.
>
> You have repeatedly denied me this control and kept it for you to have complete control.
>
> I am demanding that you give up control of these issues and return them to me in writing no later than November 26, 1994.

*See* Plaintiff's Memo in Support of Motion for Summary Judgment, Exhibit 8.

This letter does not clearly evidence Dr. Martone's intent to revoke the power of attorney such that summary judgment is appropriate. There appear to be material facts in dispute as to whether Dr. Martone, in writing this letter, intended to revoke the power of attorney or merely intended to regain some control over certain issues from Peter.

As to the December 1994 letter, Dr. Martone's intent to remove Peter as his agent is clearer. In this letter, Dr. Martone stated:

> I am enclosing a letter dated November 21, 1994, that I sent you, in regards to this same matter, nothing has happened, not even by the deadline date of November 26, 1994. I called and spoke with you on that following Monday, you then at that time requested an extension till December 2, 1994, 12:00 noon. Again the time has past, with nothing happening.
>
> Therefore, I am compelled to write to you again and am now revoking any legal services that you have done in the past or will do in the future. These services are very important to me, and you

continue to neglect them. Therefore, there should not be any service charges in this matter. I will send a courier to pick up documents, Wednesday, December 7, 1994.

*See* Plaintiff's Memo in Support of Motion for Summary Judgment, Exhibit 9.

Dr. Martone's statement in this letter that he is "now revoking any legal services that you have done in the past or will do in the future" clearly indicates an intent to revoke the power of attorney granted to Peter in 1991. As the Defendants do not claim that Peter Martone never received this letter, summary judgment would ordinarily be appropriate. However, in this case, there are material facts in dispute as to Dr. Martone's *competency* to revoke the power of attorney.

Because a power of attorney is an agency relationship and an agency is formed by contract, the mental capacity needed to enter into or revoke an agency is the same as that required to make a valid contract: the capacity to understand the nature and consequences of the transaction. *Lohman v. Sherwood*, 181 Va. 594, 607 (1943). However, contrary to the Plaintiff's contentions, the jury in the probate action did not determine the issue of Dr. Martone's competency in late 1994 when he attempted to revoke the Power of Attorney. The jury in the probate action was not instructed to consider Dr. Martone's competency at any time other than March 3, 1995. Moreover, the Defendants correctly assert that the probate jury's finding that Dr. Martone possessed testamentary capacity on March 3, 1995, says nothing of his capacity in late 1994, as capacity must be determined on the precise date on which the instrument at issue was executed. *See Gilmer v. Brown*, 186 Va. 630, 637 (1947). In addition, there was testimony at the probate trial indicating that Dr. Martone's mental capacity was not stagnant and that he had good and bad days. A reasonable jury could find that although Dr. Martone was competent in March of 1995, he was incompetent in late 1994 when he attempted to revoke the power of attorney.[2] Thus, material facts are in dispute, and summary judgment is not appropriate.

Summary judgment as to this issue is denied.

VI. *Any purported transfers of property to the April 1991 trust made by Peter Martone after November 21, 1994, acting under color of the April 1991 power*

---

[2] The Defendants also argue that material facts are in dispute as to whether Dr. Martone was subject to undue influence in late 1994 when he attempted to revoke the power of attorney. However, the Court has found no Virginia Supreme Court cases, and the Defendants have failed to cite any, applying undue influence principles to the revocation of an agent by a principal.

*of attorney were ineffective and void.*

The Plaintiff argues that upon termination of an agent's authority, the agent's inherent power to affect the legal relations of the principal ceases. Thus, the Plaintiff contends, once it is established that Dr. Martone terminated Peter Martone's authority to act under the power of attorney, it follows as a matter of law that Peter Martone could not affect Dr. Martone's title to his property by any purported transfer of title to the Trust.

Because material facts in dispute regarding Dr. Martone's competency make summary judgment not appropriate as to the revocation of the Power of Attorney, summary judgment cannot be granted as to this issue.

VII. *Upon revocation of the trust, Peter Martone's powers and duties as trustee ended, and he was obligated to return any trust property to Dr. Martone, the settlor, and render an accounting.*

The Plaintiff claims that once Peter Martone was notified that Dr. Martone had decided to revoke the trust, his powers as trustee ceased and he no longer held legal title to any trust property which may have come into his hands as co-trustee. The Plaintiff contends that both under the law governing trustees and pursuant to his contractual and fiduciary duties under the trust agreement, Peter Martone's only duties and powers with respect to the trust property were to convey it to Dr. Martone, the settlor and the only person beneficially entitled to the property, and to render an accounting to Dr. Martone or his successors in interest.

In response, the Defendants claim that the trust indicates that its assets at termination were to be distributed as Dr. Martone directed or, in the absence of such direction, "as if I had died intestate [and] unmarried ... ." The Defendants contend that because Dr. Martone did not direct how his assets were to be distributed upon any revocation, they must be distributed as though he died without a will and unmarried, that is, to the children.

Article X(f) of the 1991 trust agreement provides:

In the event of my revocation of this agreement, in whole or in part, or your resignation or removal as Trustee during my lifetime, *you shall promptly transfer and deliver to me or as I shall direct such part (or all) of the trust estate as I shall specify,* and in the event of any resignation or removal of any Trustee after my death, the resigned or removed Trustee shall promptly transfer and deliver the properties then held by it to the successor Trustee (in each case, with a proper

accounting and after deducting such amount, if any, as may then be owing to the resigned or removed Trustee).

Plaintiff's Memo in Support of Summary Judgment, Exhibit 2, Article X(f) of 1991 Trust Agreement, at 10 (emphasis added).

This section clearly supports the Plaintiff's position that upon revocation Peter Martone was required to transfer the trust property to Dr. Martone and render an accounting. This interpretation is consistent with the general principle of trusts law that the trustee is bound, upon termination of the trust, to transfer the trust property to the person beneficially entitled to the property. *See* Restatement (Second) of Trusts, § 345. The section of the 1991 trust agreement upon which the Defendants rely, Article VIII(a), deals with the distribution of the trust property upon Dr. Martone's death, rather than upon revocation. While Article VIII does not specifically indicate that its applicability is only if the trust has not been sooner revoked, as the Plaintiff suggests, this section of the trust agreement does indicate, by its plain language, that its provisions are to apply only in the context of a trust in existence upon Dr. Martone's death. That is not the situation if the trust was revoked by Dr. Martone during his lifetime, and Article VIII therefore does not apply. Pursuant to Article X(f), Peter Martone is required to return all property and render an accounting to Dr. Martone upon revocation of the trust.

However, for the reasons set out above, this court cannot resolve the issue of revocation of the 1991 trust agreement because material facts are in dispute as to Dr. Martone's competency. Thus, summary judgment cannot be granted.

VIII. *As a result of revocation of the trust and Peter Martone's removal as trustee, Peter Martone has no standing to attempt to enforce the trust.*

The Plaintiff contends that Peter Martone has no standing to ask this Court to enforce the 1991 trust because when a trust has been revoked or terminated or otherwise ceased to exist and the only duty that remains with the trustee is that of transferring the trust property in his hands to the settlor, a court of equity will not take jurisdiction over the trust upon petition of the trustee. *Chapman v. Baltimore Trust Co.*, 177 A. 285, 286 (Md. 1935); *see also, Siegel v. Cherry*, 502 N.Y.S.2d 735, 738 (App. Div. 1986).

Because material facts in dispute as to Dr. Martone's competency make summary judgment as to the revocation of the trust inappropriate at this juncture, summary judgment cannot be entered on this issue either.