# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Elizabeth K. McCall

v.

Harry A. Elver, Jr., et al.

May 8, 2007

Case No. (Civil) 01638-TF

BY JUDGE TIMOTHY S. FISHER

The following constitutes the court's ruling in the above matter on the issue joined in the litigation to this point. Briefly, the status of the litigation between these parties in the instant case is an action filed by the conservator for Sandra E. Drewry against her brother Harry A. Elver, Jr., as administrator of the estate of their father, Harry A. Elver, Sr. The issue which the court will address in this opinion is the continued viability, if any, of the Harry A. Elver, Sr., Trust established on July 2, 1997.

The plaintiff seeks declaratory judgment from this court that the "trust was revoked, or alternatively that the Wachovia account was withdrawn from the trust, in order that the estate may be settled and its assets distributed." The defendant, Harry A. Elver, Jr., moves this court for summary judgment on this issue to declare that the, "1997 Trust has remained in effect unabated since it was established in 1997. . . ."

Summary judgment is only appropriate where there are "no material facts genuinely in dispute." Rule 3:20 of the Rules of the Supreme Court of Virginia.

The defendant Trustee clearly believes there are no material facts in controversy relative to the motion for summary judgment and, interestingly enough, the plaintiff alleges that, "summary judgment is not appropriate

unless it was summary judgment for Sandra Drewry to grant her the entire estate of her father." Facts are facts, and they are either in dispute or they are not.

Both parties agree that, on July 2, 1997, Harry A. Elver, Sr., executed a will and a trust agreement with the assistance of his attorney, James C. Smith, Jr. Assets were transferred into the trust in the Wachovia Bank pursuant to the trust agreement. See Plaintiff's Complaint exhibits 2, 3, and 4. Both parties agree that, on or about November 18, 2003, Mr. Harry A. Elver, Sr., executed a valid "holographic document," attached to Plaintiff's Complaint as exhibit 6. Both parties agree that, on December 8, 2003, Mr. Harry A. Elver, Sr., executed another Last Will and Testament, prepared by Breckinridge Engles, Esq., which Will was attached to Plaintiff's Complaint as exhibit 7, and said Will was admitted to probate after Harry A. Elver, Sr.'s death on April 3, 2005. Both sides admit the authenticity and validity of the aforesaid documents and a decision on this issue can be and is made herein solely from a review of the admitted documents.

Exhibit 4 of Plaintiff's Complaint is an account statement from 2005 for the Harry A. Elver, Sr., Trust at Wachovia Bank, and both sides agree that no changes were made to that trust from the establishment of the trust on July 2, 1997, through the present day with the exception of plaintiff's allegation that the November 18, 2003, "holographic document" terminated the trust and/or that the probated will of December 8, 2003, modified or terminated the trust.

The plaintiff claims that summary judgment would be appropriate for Sandra E. Drewry applying the provisions of the Virginia Uniform Trust Act adopted and in effect as of July 1, 2006, codified in Virginia Code § 55-541.01, *et seq.* Virginia Code § 55-551.06 does state as follows:

A. Except as otherwise provided in this chapter:
1. This chapter applies to all trusts created before, on, or after July 1, 2006. . . .
5. An act done before July 1, 2006, is not affected by this chapter;

Whether the Virginia Uniform Trust Act as adopted and in effect on or after July 1, 2006, applies to the facts of this case or not, or whether the Virginia law as it was in effect in 1997 or 2003 when the acts upon which plaintiff relies occurred are applicable appears to be a distinction without a difference.

Virginia Code § 55.546.02 of the Virginia Uniform Trust Act states as follows in subsection C.

The settlor may revoke or amend a revocable trust:
1. By substantial compliance with the method provided in the terms of the trust; or
2. If the terms of the trust do not provide a method, by any method manifesting clear and convincing evidence of the settlor's intent.

Both parties agree that Article III of the Harry A. Elver, Sr., Trust executed on July 2, 1997, states as follows:

## RIGHTS OF THE GRANTOR

The grantor shall have at all times the following rights and powers:
A. To cancel, terminate, or amend this agreement, in whole or in part, including without limitation the unilateral right to change or remove the Trustee, by written instrument delivered to the Trustee, without the consent of the Trustee or any beneficiary, provided that the duties and liabilities of the Trustee shall not be substantially increased without the written consent of the Trustee.

Both parties agree this was a revocable trust and there is no question the trust contains a "method provided in the terms of the trust" to cancel, terminate, or amend it, "by written instrument delivered to the trustee."

The plaintiff has not pointed to anything in the Virginia Uniform Trust Act that changes the decision of the Virginia Supreme Court in *Cohn v. Central National Bank of Richmond*, 191 Va. 12, 60 S.E.2d 30 (1950). The court in that case indicated that, "if the settlor reserves the power to revoke the trust only by notice in writing delivered to the trustee, he can revoke it only by delivering such notice to the trustee." *Id.* at 18, 33. The court further indicated, "If the settlor reserves a power to revoke the trust by a transaction *inter vivos*, as, for example, by a notice to the trustee, he cannot revoke the trust by his will." *Id.* at 18, 33.

That was the law in 1950 and beyond, and the Virginia Uniform Trust Act, even if it applies at this time, indicates that the settlor may only revoke or amend a revocable trust, "by substantial compliance with a method provided in the terms of the trust."

The plaintiff makes much of the "intent" of Harry A. Elver, Sr., regarding the November 18, 2003, "holographic document," and the December 8, 2003, Will subsequently probated.

Neither of those documents refer to cancelling, terminating, or amending the trust. Neither of those documents mention the "Trust."

Neither of those documents are intended to be other than a "Last Will and Testament," as both specifically identify themselves as such and as such neither of those documents were intended nor can they have any *inter vivos* effect. See *Bickers v. Shenandoah Valley National Bank of Winchester*, 197 Va. 145, 88 S.E. 2d 889 (1955).

There is an argument made by the plaintiff that the November 18, 2003, holographic document was clearly a "notice in writing delivered to the trustee" because Mr. Harry A. Elver, Sr., was the trustee and he obviously wrote the document and it was delivered to him at the time he wrote it.

The plaintiff seems to argue for the court to create a "typical testator" exception to settled trust law or compliance with the terms of a trust. Even the Uniform Trust Code requires "substantial compliance" with the terms of the Trust to modify it; it does not provide for no compliance. Mr. Elver could not replace the Trustee without "written notice delivered to the trustee;" however, he had the ability to "modify or terminate" the Trust by doing so with his "feet" to coin a phrase.

The "typical testator" could quite clearly simply go to the bank and take the assets out of the "Trust" or re-name the account without the intervention of expensive legal advice; if that is the "intent" of the "typical testator." That is because he did have "total control," which he apparently chose not to exercise. Both sides agree, Harry A. Elver, Sr., took no action subsequent to the preparation of the November 18, 2003, "holographic document" or the execution of the December 8, 2003, Last Will and Testament inconsistent with the continued vitality of the Trust up to his death over a year and one half later. (See Wachovia Securities Statement 2005; Exhibit 4 to Plaintiff's Complaint.)

An examination of two Last Wills and Testaments to divine the "intent" of the testator is not a substitute for compliance with the plain meaning of the trust instrument.

Words matter. The November 18, 2003, "document" does not reference the trust nor does it direct that the trust be cancelled, amended, or terminated. The November 18, 2003, "holographic document" quite clearly identifies itself as a "Last Will and Testament" and in the capacity it was written, Mr. Harry A. Elver, Sr., was the testator. There is a difference between the capacity of "testator" and "trustee." See *Austin v. City of Alexandria*, 265 Va. 89 (2003).

332

Accordingly, the court finds that the November 18, 2003, "holographic document" did not comply with the terms of the Harry A. Elver, Sr., trust to "cancel, amend, or terminate the trust and that The Harry A. Elver, Sr., Trust was not cancelled, amended, or terminated by the December 8, 2003, Will subsequently admitted to probate.

Partial Summary Judgement is granted to the defendant on this issue.

I would further remind both sides Ms. Chong's fee as Guardian ad Litem is due, and I order that both sides are responsible for fifty percent of the fee and order payment within thirty days.