# Richmond

ELIZABETH ROLLER BOTTIMORE V. THE FIRST AND MERCHANTS NATIONAL BANK OF RICHMOND, ET ALS.

April 28, 1938.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Alexander H. Sands* and *Alexander H. Sands, Jr.,* for the appellant.

No appearance for the appellees.

EGGLESTON, J., delivered the opinion of the court.

On December 17, 1927, Elizabeth Roller, hereinafter called the trustor, then unmarried, and having no mother or father living, entered into a written trust agreement with The First and Merchants National Bank of Richmond, hereinafter called the trustee, whereby certain cash and securities, "when delivered to the trustee," were to be held by it in trust as follows:

The trustee was empowered to invest, convert and reinvest said property; to collect all income from the trust fund, and, after deducting taxes and the expenses of administering the trust, to pay the net income to the trustor during her life.

Neither the corpus nor the income of the trust fund was to be subject to the liabilities of the trustor, nor to alienation by her. It was expressly stipulated that "This agreement shall be irrevocable by the trustor."

It was further agreed: "ARTICLE IV. On the death of the Trustor the corpus and accumulated income, if any, of the Trust Fund shall pass as the Trustor shall direct by will, and, if the Trustor shall die intestate as to the Trust Fund, it shall be divided among her children who survive her and the lawful issue, *per stirpes,* of those children who predecease the Trustor leaving such issue who survive her, but the shares or parts of shares of all minor beneficiaries shall be held by the Trustee who shall expend on the several minor beneficiaries the net income and so much of the corpus of their respective shares or parts of shares as the Trustee in its absolute discretion shall deem necessary for their maintenance, support and/or education and/or for any emergency sufficient in the opinion of the Trustee to warrant such action, until each

shall in turn reach the age of twenty-one years, when the corpus or so much as remains thereof shall be paid over outright and free of all trusts. The shares of any of the children of the Trustor who take under this Article but die before becoming twenty-one years of age, unmarried and without lawful issue, shall revert to the Trust Fund and pass under the terms of this agreement. If, however, there be a widow, or widower, and/or lawful issue surviving, the said shares shall pass according to the provisions of the Virginia Statutes for Descents and Distribution as then in effect. If the Trustor shall die intestate and without leaving lawful issue who survive her, then whatever remains of the Trust Fund shall be equally divided among those sisters of the Grantor who survive her and the lawful issue, *per stirpes,* of those sisters who predecease her leaving lawful issue who survive her, absolutely and free of all trusts."

Although it does not so appear of record, we may assume that the agreement was put into effect, for on March 4, 1936, the trustor, having in the meantime married one Bottimore, filed a bill in equity in the court below alleging the execution of the aforesaid trust agreement; that she desired to revoke the same; that she had no children; that her next of kin were her two full sisters, Wilfrid Pyle and Lucy Roller, and her two half sisters, Frances R. Grattan and Margaret S. Ogilvie; that these sisters were the only persons now in being, described in Article IV of the trust; and that she, the trustor, was the sole beneficiary under the trust, and as such was entitled to have the agreement revoked and cancelled and the corpus of the trust estate returned to her.

The trustee bank and the said four sisters were made parties defendant to the bill.

In its answer the trustee bank admitted the facts but not the legal conclusions stated in the bill. It neither affirmed nor denied the right of the trustor as a matter of law to revoke the trust agreement, but consented and agreed, "if power and/or interest is possessed by it, that

the court may enter an order herein annulling, revoking and cancelling the contract or trust agreement," as prayed for in the bill.

The four sisters filed a joint answer in which they consented, in so far as their interests were concerned, to a revocation of the trust.

Upon a hearing of the matter the lower court decreed that the trust agreement was not subject to revocation by the trustor, and dismissed the bill of complaint. From this decree the present appeal has been taken.

The single issue presented for determination is whether the trust agreement is subject to revocation as sought by the trustor in this proceeding.

The claim of the trustor, appellant, is that under the terms of the instrument she is the sole beneficiary who has any vested interest in the trust estate, and this being so, she is entitled, at her election, to have the agreement revoked.

It is well settled that where a valid and effective voluntary trust has been created, and no power of revocation has been reserved, it can not be revoked by the creator without the consent of the beneficiaries thereunder. If any of the beneficiaries are not in being, or are not *sui juris,* and hence can not consent, the trust agreement can not be revoked. *Skipwith's Ex'r* v. *Cunningham,* 8 Leigh (35 Va.) 271, 31 Am. Dec. 642; *Schroeder* v. *Woodward,* 116 Va. 506, 526, 527, 82 S. E. 192; *Russell's Ex'rs* v. *Passmore,* 127 Va. 475, 497, 103 S. E. 652; 38 A. L. R. 941, note; 91 A. L. R. 103, note, citing numerous cases.

The converse of the proposition is equally well settled; that is, where all of the beneficiaries under a trust agreement are *sui juris* and consent to a revocation, the agreement may be revoked by the trustor. *Johns* v. *Birmingham Trust & Savings Co.,* 205 Ala. 535, 88 So. 835; *Burton* v. *Boren,* 308 Ill. 440, 139 N. E. 868; *Whittemore* v. *Equitable Trust Co.,* 162 App. Div. 607, 147 N. Y. S. 1058; *Fredricks* v. *Near,* 260 Mich. 627, 245 N. W. 537. And this is so even though the agreement expressly pro-

vides that it shall be irrevocable.   Restatement of the Law of Trusts, vol. II, p. 1038, sec. 339; *Aranyi* v. *Bankers' Trust Co.*, 201 App. Div. 706, 194 N. Y. S. 614; *Schwartz* v. *Fulton Trust Co.*, 119 Misc. 831, 198 N. Y. S. 275.

Whether the trust agreement here involved can be revoked, then, must turn upon whether or not the trustor is the sole beneficiary therein.   If she is the sole beneficiary, then she is the only person interested and can consent to the revocation.

On the other hand, if any of the parties designated by the trustor in Article IV, quoted above (other than the four sisters who have consented to the revocation), have any beneficial interest in the trust estate, then the agreement can not be revoked, because such parties are not in being and can not consent to the revocation.

We think an analysis of Article IV shows that the trustor is the only person who has a beneficial interest in the trust fund, and that, therefore, the agreement may be revoked upon her request and consent.

It will be observed that under the trust agreement the trustor has put beyond her reach merely the enjoyment of the corpus or principal of the trust fund.   She is to receive the net income from the estate during her life. She reserves to herself the right to dispose of the corpus at her death.   Then the trust shall cease and the property shall pass either to those persons named in her will, or, should she die intestate, to such other persons as are designated in Article IV, who are, in effect, her possible heirs or next of kin.

A revocation of this trust agreement at the request of the trustor takes from the parties mentioned in Article IV nothing more than the trustor can take by her own act under the terms of the agreement, for by leaving a will she can eliminate her children, their issue, and all her possible heirs and next of kin, or she can decline to make a will and there would be no appointees.

Clearly the appointees under a will which the trustor might make have no beneficial estate or interest in

the trust fund, simply because the trustor may not make a will. *Botzum* v. *Havana Nat. Bank,* 367 Ill. 539, 12 N. E. (2d) 203; Restatement of the Law of Trusts, vol. II, pp. 988, 989, sec. 330.

Neither do the trustor's "children who survive her and the lawful issue, *per stirpes,* of those children who predecease the trustor," acquire any vested interest in the estate, because there are no such children or issue in being with a present capacity to take. Graves' Notes on Real Property, sec. 174; *Smoot* v. *Bibb,* 124 Va. 28, 33, 97 S. E. 355.

Moreover, any interest which the trustor's children or their issue might receive is further contingent upon the trustor's not making a will and thereby excluding them from sharing in the property.

The sisters of the trustor who may survive her, and their lawful issue, have no vested interest in the property, because such interest as is given to them is subject to the double contingency that the trustor might devise the property to others, or that the trustor might die intestate leaving children, or their issue, to take the property under the previous provision in Article IV.

We think, therefore, that in effect, the trustor has merely conveyed to the trustee a life interest in the property for the benefit of the trustor herself, leaving in the trustor a reversion in the property. *Copenhaver* v. *Pendleton,* 155 Va. 463, 476, 477, 155 S. E. 802, 77 A. L. R. 324; 1 Minor on Real Property (2d Ed.), secs. 769, 771. Upon the death of the trustor such reversion would pass in accordance with the will of the trustor, if she made a will; if not, to the trustor's heirs or next of kin. This is, in effect, the provision of Article IV of the trust agreement.

It follows, then, that the parties designated in Article IV acquired no estate in the trust fund, but merely an expectancy or possibility of an estate.

In *Doctor* v. *Hughes,* 225 N. Y. 305, 122 N. E. 221, 223, in an opinion by Judge Cardozo, it was held that where

a trust deed provided for payment of a yearly sum to the grantor, and that upon the death of the grantor the trustee should convey the property to the grantor's heirs at law, such heirs did not take a remainder by purchase under the instrument, but inherited from the grantor the reversion which had been left in the trust estate after the creation of the life estate therein, and that neither the rule in *Shelley's Case* nor the statute abrogating the rule applied to that situation. The court there said that since the interest of the heirs under the instrument was "subject to destruction at the will of the grantor," such heirs "had an expectancy, but no estate."

In *Schwartz* v. *Fulton Trust Co. of New York*, 119 Misc. 831, 198 N. Y. S. 275, it was held that a trust deed naming the settler as the sole beneficiary during her life and purporting to grant vested interests in remainders to such persons as she may appoint in her will, or in default thereof to her next of kin, created no estate either in the grantor's possible appointees under her will or her next of kin, and that since this left the whole estate in the settlor, such trust agreement could be revoked by her, although the agreement in terms stated that it was to be irrevocable.

The court there said (198 N. Y. S. 275, at p. 276): "Estates are either those in possession or in expectancy. Obviously this proposed grant is that of the latter class. It is purposed to make the grant contingent upon the happening of an event, to wit, the death of the settlor without a designation of appointees to take the corpus. The terms of the instrument grant nothing more than the law would give if the same contingency should eventuate, because the personal property on the death of the settlor would be distributed among her next of kin according to New York law in the absence of a testamentary disposition or appointment. These persons, whoever they may be at death, have no more interest now than they had without this instrument. They may be defeated by a will under the instrument. They could

have been deprived of intestate succession without this instrument's creation of a condition. They are persons now unknown and unknowable. *'Nemo est haeres viventis'*."

In *Stephens* v. *Moore,* 298 Mo. 215, 249 S. W. 601, 603, the settlor conveyed his property to a trustee who was to manage the same and pay the settlor the net income therefrom during his life. The settlor further provided in the deed of trust that "upon my death the trust shall terminate and the trust shall pass to and vest in my legal heirs, or as may be directed in my will." It was held that the settlor was the sole beneficiary and had the right to revoke the trust.

The court said (249 S. W. 601, at p. 604): "It is the generally accepted rule that, where there is a grant to one for life, with remainder to the heirs of the grantor, there is in fact no remainder; for the limitation, though denominated a remainder, continues in the grantor as his old reversion, and does not devolve upon his heirs as purchasers, as it would if it were a remainder, but as his heirs."

See also, 23 R. C. L., p. 516, sec. 51; *Burton* v. *Boren, supra; Johns* v. *Birmingham Trust & Savings Co., supra; Seguin State Bank & Trust Co.* v. *Locke* (Texas App.), 102 S. W. (2d) 1050, 1054.

In Restatement of the Law of Trusts, vol. I, p. 321, sec. 127, it is said: "So also, the settlor is sole beneficiary where he transfers property in trust to pay the income to him for life and upon his death to convey the principal as he may by deed or by will appoint, although it is provided that in default of appointment the property shall be conveyed to his heirs or next of kin."

As an illustration of this the author further says (vol. I, p. 322, sec. 127): "A transfers property to B in trust to pay the income to A for life and on A's death to pay the principal as A may by deed or by will appoint and in default of appointment to A's heirs or next of kin. A is the sole beneficiary of the trust."

In volume II, p. 1038, sec. 339, of the same work, it is said: "If the settlor is the sole beneficiary of a trust and is not under an incapacity, he can compel the termination of the trust, although the purposes of the trust have not been accomplished.

"*Comment: a.* The rule stated in this Section is applicable although the settlor does not reserve a power of revocation, and even though it is provided in specific words by the terms of the trust that the trust shall be irrevocable."

As an illustration of this the author says (vol. II, p. 1039, sec. 339): "A transfers property to B in trust to pay the income to A for life and on A's death to pay the principal as A may by deed or by will appoint and in default of appointment to A's heirs or next of kin. A reserves no power of revocation. A can compel B to transfer the property to him."

While the authorities are by no means in accord on the subject, as will be found by an examination of the many cases collected in the annotations in 38 A. L. R. 941 and 91 A. L. R. 102, we think the better reasoned decisions support the view that in the instant case the trustor is the sole beneficiary of the trust and is entitled to a revocation thereof.

Accordingly the decree complained of will be reversed, and a final decree will be entered here revoking and canceling the said trust agreement and discharging the said parties thereto from the performance of any and all duties thereunder, and authorizing and directing the said trustee, after the payment of all unpaid accrued charges and expenses of the trust (including the taxed costs of this proceeding), to pay and deliver to the said appellant the principal and corpus of said trust estate, together with any accumulated income thereon.

*Reversed and final decree.*