Present:  All the Justices

WILLIAM Y. AUSTIN, TRUSTEE OF THE
 JAMES M. DUNCAN, III, LIVING TRUST

OPINION BY
v.  Record No. 020162       JUSTICE LAWRENCE L. KOONTZ, JR.
                               JANUARY 10, 2003
CITY OF ALEXANDRIA, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
Alfred D. Swersky, Judge

In this appeal, we consider whether the trial court properly determined that an individual who was grantor, trustee, and beneficiary of a revocable land trust effectively conveyed title to real property held in the trust by a subsequent deed which did not specify the capacity in which he was acting.

BACKGROUND

This case involves parcels of commercial real property, commonly known as 200 North Henry Street and 1115 North Cameron Street, located in the City of Alexandria (the property).  The material facts were stipulated in the trial court.

On September 7, 1993, James M. Duncan, III, executed an unrecorded declaration of trust establishing The James M. Duncan, III, Living Trust (the Living Trust).[1]  The pertinent provisions of the declaration may be summarized in the following manner.  Duncan was named as the initial trustee.  Under Article

2, Duncan was named as the income beneficiary during his lifetime.  In addition, Article 2 provided for discretionary distributions of corpus by the trustee to Duncan.  Article 3 provided that "[b]y signed instruments delivered to the Trustee during [Duncan's] lifetime, [Duncan] may: (1) withdraw property from this trust in any amount and at any time upon giving reasonable notice in writing to the Trustee."

Articles 5 and 6 provided for the distribution of the trust corpus upon Duncan's death, with the tangible personal property being distributed immediately to two alternate remaindermen, and the balance of the corpus being placed into three charitable remainder trusts for the benefit of three remaindermen during their lifetimes and then to The James M. Duncan, Jr., Library Foundation for the benefit of the James M. Duncan, Jr., Library located in Alexandria, Virginia.  Article 8 provided for the appointment of successor trustees and co-trustees.  Burke & Herbert Bank & Trust Company of Alexandria was designated as the first successor trustee upon Duncan's death or resignation as original trustee.  Article 12 provided for the broad powers of the trustee, which included the power to transfer title to the real property in the trust.

---

[1] Although Duncan resided in the State of California at the time the Living Trust was created, the trust document specified that it was to be governed by the law of Virginia.

Concurrent with the execution of the Living Trust declaration on September 7, 1993, Duncan, as grantor, executed a "DEED IN TRUST" conveying the property to himself as trustee of the Living Trust. The legal description of the property included a reference to its prior recorded transfer to Duncan under the will of Ruth Birch Deahl Duncan. The deed referenced Code § 55-17.1 and declared that "the trust created by this conveyance shall not fail, . . . because no beneficiaries are specified by name herein or because no duties are imposed upon the Trustee." The deed further provided that "[a]ny revocation of the [Living] Trust Agreement by the Grantor shall not be effective as to the property herein conveyed unless he execute[s] a deed, duly recorded, evidencing such revocation and reversion of title." This deed was duly recorded in the land records of the City of Alexandria on June 15, 1994.

On June 30, 1994, Duncan executed an amendment to the Living Trust providing that, upon his death or resignation as trustee, Burke & Herbert Bank & Trust Company and William Y. Austin should succeed him as co-trustees. Austin was the lifetime beneficiary of one of the charitable remainder trusts established under the Living Trust.

On August 3, 1999, Duncan executed a second deed purporting to convey the property previously conveyed to the Living Trust. This deed, which was styled as a "DEED OF CONTRIBUTION," was

3

headed with the notation that it had been "PREPARED WITHOUT BENEFIT OF A TITLE REPORT." The deed named Duncan as grantor and named as the grantee the "James M. Duncan, III, Trustee for the J. M. Duncan, III Charitable Remainder Unitrust." The legal description of the property in the deed contained no reference to Duncan's prior transfer of this same property to the Living Trust or to any reversion of the title of this property to Duncan in his individual capacity. The deed was signed by Duncan, but did not specify the capacity in which he executed it.

On August 4, 1999, Duncan executed a trust agreement establishing The J. M. Duncan III Charitable Remainder Unitrust (the Unitrust). As with the Living Trust, Duncan was named as the initial trustee and lifetime beneficiary of the Unitrust. The charitable entities that would receive any remaining corpus and accumulated income upon Duncan's death were the St. Paul of the Desert Episcopal Church of Palm Springs, California, which would receive fifty percent of the remainder, the James M. Duncan, Jr., Library, in Alexandria, Virginia, which would receive forty-nine percent, and the Gamma Mu Foundation, which would receive the remaining one percent.

Attached to the Unitrust agreement as exhibit A was a legal description of the property to be held in the trust. The property described was substantially the same property

4

previously deeded to the Living Trust. However, as with the deed purporting to convey the property to the Unitrust, no mention was made of Duncan's prior conveyance of this same property to the Living Trust or of any reversion of the title of the property to Duncan individually.[2] The exhibit concluded with an acknowledgement of the receipt of the property by Duncan in his capacity as trustee of the Unitrust.

The deed purporting to convey the property to the Unitrust was recorded in the land records of the City of Alexandria on August 5, 1999. The Unitrust agreement was not recorded.

On October 20, 1999, Duncan, expressly acting in his capacity as trustee of the Unitrust and pursuant to his authority as the trustee of that trust, executed a contract to sell the property to Nationwide CH, LLC (Nationwide) for $2,200,000.[3] Settlement was to occur on or before eighteen months from the contract date.

Duncan died on March 2, 2000. Burke & Herbert Bank & Trust Company declined its appointment as successor co-trustee for the Living Trust on July 19, 2000. On September 26, 2000, the

---

[2] The legal descriptions in the two deeds and the exhibit attached to the Unitrust vary in certain details. However, the parties do not make an issue of this. Accordingly, this anomaly in the record does not enter into our analysis.

[3] This purchase contract listed the seller as "J. M. DUNCAN, III IRREVOCABLE CHARITABLE TRUST." This discrepancy in the

Superior Court of the State of California in and for the County of Riverside confirmed Austin as "the sole successor trustee" of the Living Trust and confirmed his title, as trustee, to certain real property located in the State of California which had previously been donated to that trust by Duncan.

On February 15, 2001, Austin, acting in his capacity as trustee of the Living Trust, filed a bill of complaint in the Circuit Court of the City of Alexandria (the trial court) against the City of Alexandria, the Alexandria Library Company, the Alexandria Library Board (collectively, the City), St. Paul of the Desert Episcopal Church, Gamma Mu Foundation, and Nationwide seeking a declaratory judgment that he is vested with legal and equitable title to the property as trustee of the Living Trust.[4]  The Alexandria Library Company owns the J. M. Duncan, Jr., Library which is operated by the Alexandria Library Board which oversees library services in the City of Alexandria.

In support of his bill of complaint, Austin essentially alleged that the 1999 deed was ineffective to donate the property to the Unitrust because by the 1993 deed Duncan in his individual capacity had conveyed title to the property to himself in his capacity as trustee of the Living Trust and that

proper name of the Unitrust is not pertinent to the issue presented in the present appeal.

6

neither that conveyance nor the Living Trust had been revoked. The City and Nationwide filed separate answers in which they essentially contended that the creation of the Unitrust and the execution of the 1999 deed effectively revoked the prior conveyance of the property to the Living Trust and, thus, that the subsequent execution of the sale contract for the property by Duncan as trustee of the Unitrust was valid.

Ultimately Austin, the City, and Nationwide filed cross-motions for summary judgment. By final decree on October 31, 2001, the trial court entered judgment for the City and Nationwide. In an opinion letter incorporated by reference into the final decree, the trial court expressly found that "Duncan as grantor of the living trust had the authority to withdraw real estate from that trust. He did so by virtue of the documents creating the unitrust and the deed to himself as trustee of the unitrust." By an order dated April 30, 2002, we awarded Austin this appeal.

## DISCUSSION

When, as here, the facts are stipulated in the trial court by all parties, the trial court's "findings, although highly persuasive and entitled to great weight, are not binding on appeal. However, we will not reverse the trial court's judgment

---

[4] St. Paul Church and Gamma Mu Foundation are not parties in

7

on appeal unless it is plainly wrong or without evidence to support it." Ohio Casualty Ins. v. State Farm Fire & Casualty, 262 Va. 238, 240-241, 546 S.E.2d 421, 422 (2001)(citations omitted). Applying this standard, the focus of our analysis in this appeal is whether the stipulated facts support the trial court's judgment that the creation of the Unitrust and the execution of the 1999 deed purporting to convey the property to the Unitrust were sufficient to satisfy the provisions of the Living Trust and the 1993 deed conveying the property to the Living Trust to withdraw the property from the Living Trust so that it reverted to Duncan in his individual capacity. Stated another way, the focus of our analysis is whether under the stipulated facts title to the property passed to Duncan as trustee of the Unitrust by the 1999 deed or, as a matter of law, title to the property remained with Duncan as trustee of the Living Trust until his death.

We begin our analysis with well-settled principles regarding land trusts in this Commonwealth. Obviously, no trust can arise while the grantor retains both the full equitable interest and legal title in the trust property. See Ballard v. McCoy, 247 Va. 513, 517, 443 S.E.2d 146, 148 (1994). Therefore, when real property is placed into a trust, a change in the title

this appeal.

8

of that property must be effected.  Id.; see also 1 Austin W.
Scott & William F. Fratcher, The Law of Trusts § 17 (4th ed.
1987).  A change in the title occurs and a trust is created when
the grantor conveys both equitable and legal title in the
property to the trustee.  See Air Power v. Thompson, 244 Va.
534, 537, 422 S.E.2d 768, 770 (1992).  However, when the trust
is revocable, the grantor retains a right to withdraw the
property from the trust in accordance with the terms specified
by the trust agreement and the recorded deed conveying the
property to the trust.  See Cohn v. Central National Bank of
Richmond, 191 Va. 12, 19, 60 S.E.2d 30, 33 (1950).

In conveying the property in 1993 by recorded deed to the
Living Trust, in accord with the provisions of Code § 55-17.1,
Duncan transferred the complete title in the property to himself
as trustee.  See Air Power, 244 Va. at 537, 422 S.E.2d at 770.
In his capacity as the beneficiary of the Living Trust, his
interest in the property became personal property.  See Curtis
v. Lee Land Trust, 235 Va. 491, 494, 369 S.E.2d 853, 854 (1988).
Thus, Duncan subsequently could not convey title to the property
to himself as trustee of the Unitrust without first revoking the
prior conveyance to, and withdrawing the property from, the
Living Trust so that title of the property would revert to him
in his individual capacity.  See Ballard, 247 Va. at 517, 443
S.E.2d at 148.  To do so, it was necessary for Duncan to comply

9

with both the revocation and withdrawal provisions of Article 3 of the Living Trust and the corresponding provisions in the 1993 recorded deed conveying the property to the Living Trust. See Cohn, 191 Va. at 19, 60 S.E.2d at 33.

The City and Nationwide contend that, because Duncan was both grantor and trustee of the Living Trust, the subsequent Unitrust agreement and the 1999 recorded deed were "signed instruments" sufficient to give "reasonable notice in writing to the Trustee" of Duncan's withdrawal of the property from the Living Trust pursuant to the requirements of Article 3 of the declaration of that trust and the revocation and reversion of title requirements of the 1993 deed. Notice to the trustee of the Living Trust of the withdrawal of the property from that trust, on the facts of this case, is a non-issue. As noted, Duncan was both grantor and trustee. Accordingly, we will accept the contention that the notice requirements for withdrawal of the property under Article 3 of the Living Trust declaration have been satisfied.

However, in order to accomplish the withdrawal of the property from the Living Trust, Duncan was required by the provisions of the 1993 deed to "execute a deed, duly recorded, evidencing such revocation and reversion of title." (Emphasis added). We are of opinion that this provision contemplates the execution of a recorded deed which effectively accomplishes the

reversion of the legal title, as reflected in the appropriate land records as a result of the 1993 deed, from Duncan as trustee of the Living Trust to Duncan individually.  There is no deed that specifically transfers the legal title of the property in accordance with this requirement of the 1993 deed.  The 1999 deed purporting to convey the property to the Unitrust was not executed by Duncan in his capacity as trustee of the Living Trust, and the absence of any reference in that deed to the Living Trust precludes the conclusion that it effectively satisfied the revocation and reversion of title requirements of the 1993 recorded deed.  It then follows, as a matter of law, that because Duncan never effectively caused the reversion of the title of the property to himself individually after 1993, he did not convey the title of the property to the trustee of the Unitrust in 1999.

The City and Nationwide, relying on Bottimore v. First and Merchants National Bank of Richmond, 170 Va. 221, 226, 196 S.E. 593, 594 (1938), further contend that Duncan could effectively revoke the conveyance to the Living Trust because he was the sole beneficiary of that trust.  Their reliance on this case is misplaced.  In Bottimore, we held that an irrevocable trust could be revoked by the consent of all parties in interest provided they are sui juris.  170 Va. at 226, 196 S.E. at 594. We further held that because the grantor was the sole

11

beneficiary, she could revoke the trust agreement. Id. at 227, 196 S.E. at 594. The issue here, however, is not whether the Living Trust was revocable. Clearly it was. The issue is whether Duncan complied with the requirements of the Living Trust declaration and the 1993 deed for withdrawing the property from that trust. The Bottimore case simply does not address that issue.

In sum, we hold that the legal and equitable title of the property remained with Duncan as trustee of the Living Trust until his death. Accordingly, we further hold that the 1999 deed purporting to convey the property to the Unitrust was ineffective because Duncan did not make the conveyance as trustee of the Living Trust and he had no legal title in the property to convey in his individual capacity.

CONCLUSION

For these reasons, we will reverse the judgment of the trial court, enter judgment here for Austin, in his capacity as trustee of the Living Trust, and remand the case to the trial court for entry of an appropriate order consistent with this opinion to be recorded in the land records of the City of Alexandria.

Reversed,<br>final judgment,<br>and remanded.

12