Present: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and
Powell, JJ., and Lacy, S.J.

NANCY C. JIMENEZ

                                        OPINION BY
v.    Record No. 140112          JUSTICE LEROY F. MILLETTE, JR.
                                        October 31, 2014
LEWIS S. CORR, JR.,
INDIVIDUALLY, AND AS EXECUTOR
OF THE ESTATE OF NORMA F. CORR
AND TRUSTEE OF THE NORMA F. CORR
REVOCABLE TRUST, ET AL.

            FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
                        Frederick B. Lowe, Judge

     In this appeal we consider whether shares of stock, which

would otherwise be conveyed to an inter vivos trust by way of a

pour-over provision set forth in a shareholder's will, must

instead be bequeathed in a manner set forth in a shareholders'

agreement entered into by that shareholder several years after

executing her estate planning documents.

                      I.    Facts and Proceedings

     This appeal arises from a dispute over the disposition of

shares of stock in a family held business after the death of

that business's founding generation.  Six people are central to

this dispute as it comes to us on appeal.  Lewis S. Corr, Sr.

("Mr. Corr") and Norma F. Corr were married prior to their

deaths.  Mr. Corr and Norma had three children: Lewis S. Corr,

Jr. ("Lewis"), Patricia Corr Williams, and Nancy Corr Jimenez.

Patricia is married to Thomas M. Williams.

Mr. Corr established Capitol Foundry of Virginia ("Capitol Foundry" or "Company") in 1970 as a broker and reseller of castings of heavy infrastructure. Capitol Foundry was incorporated in 1976 with Mr. Corr initially as the sole shareholder. Lewis joined the business when it incorporated and later, in 1981, Mr. Corr allowed Lewis to purchase 5 newly issued shares of Capitol Foundry stock. That same year, Nancy joined the business.

In 1999, Mr. Corr passed away, and all of his outstanding shares in Capitol Foundry were transferred outright to his wife Norma. In 2002, Norma conveyed 5 of her shares to Nancy. At the time of Norma's death in 2012, Norma owned 95 shares of Capitol Foundry stock, Lewis owned 5 shares of Capitol Foundry stock, and Nancy owned the remaining 5 shares of Capitol Foundry stock.

After Norma's death, Nancy filed suit in the Circuit Court of the City of Virginia Beach against Lewis, the executors of Norma's estate, and Capitol Foundry. Nancy alleged that Norma, Lewis, and Nancy entered into an agreement (the "Shareholders' Agreement") which required Norma's executors to make Norma's 95 shares of Capitol Foundry stock available for purchase by Capitol Foundry, and required Capitol Foundry to purchase those shares.

The defendants countered that Norma's estate planning documents, and not the Shareholders' Agreement, controlled disposition of Norma's 95 shares of Capitol Foundry stock. Therefore, in accordance with the estate planning documents, those shares were to go into an inter vivos trust rather than being subject to purchase under the Shareholders' Agreement.

Nancy then amended her complaint. In her amended pleading, Nancy sought (1) declaratory judgment relief in the form of the court declaring that the Shareholders' Agreement, and not Norma's estate planning documents, governed disposition of Norma's shares of Capitol Foundry stock, and (2) specific performance relief in the form of Norma's executors making her 95 shares of Capitol Foundry stock available for purchase by Nancy and Capitol Foundry.

While this litigation was ongoing, the parties entered into an agreement that permitted Capitol Foundry to purchase 64.4 shares of Norma's Capitol Foundry stock so that Norma's estate would obtain tax benefits under Internal Revenue Code § 303 (the "Stock Redemption Agreement"). The disposition of Norma's remaining 30.6 shares of Capitol Foundry stock remained at issue subsequent to this purchase.

After a two day trial, the circuit court entered a final order in this matter. The circuit court held that the relevant portions of the Shareholders' Agreement were not applicable to

3

Norma's shares of Capitol Foundry stock, and therefore those shares were to pass to the inter vivos trust established by Norma's estate planning documents. Moreover, because those estate planning documents permitted Lewis to exercise an exclusive option to purchase all Capitol Foundry stock which passed into the inter vivos trust, Lewis properly exercised such an option when he executed and delivered the document called for under the terms of Norma's estate planning documents (the "Exercise of Option").

Nancy timely filed a petition for appeal with this Court. We granted eight assignments of error and one assignment of cross-error. These assignments and cross assignment direct us to address two issues:

> 1. How do Norma's estate planning documents and the Shareholders' Agreement operate to dispose of Norma's shares of Capitol Foundry stock upon her death?

> 2. Did the parties sufficiently plead the issue of whether Lewis effectively exercised his exclusive option to purchase Capitol Foundry stock held in the inter vivos trust, so as to allow the circuit court to rule on that issue?

In light of our determination of how the various documents operate, which resolves this appeal, we do not reach this second issue. Gardner v. Commonwealth, __ Va. __, __ n.3, 758 S.E.2d 540, 542 n.3 (2014).

4

## II. Discussion

### A. Standard of Review

We review de novo the circuit court's determination of "the legal effect of [the] written document[s]" pertinent to this appeal. Jones v. Brandt, 274 Va. 131, 135, 645 S.E.2d 312, 314 (2007).

### B. Norma's Estate Planning Documents

When construing a particular legal instrument, if other documents were "executed at the same time or contemporaneously between the same parties, in reference to the same subject matter" as the legal instrument, then all such documents "must be regarded as parts of one transaction, and receive the same construction as if their several provisions were in one and the same instrument." Bailey v. Town of Saltville, 279 Va. 627, 633, 691 S.E.2d 491, 493 (2010) (internal quotation marks and citation omitted). Norma's Last Will and Testament ("Norma's Will") and the Norma F. Corr Revocable Trust document (the "Trust Document") were both executed on July 17, 1992, were both executed by Norma, and reference one another. We therefore consider these two documents together "as parts of one transaction." Id.

#### 1. Norma's Last Will and Testament

Norma's Will nominated and appointed Lewis and Joseph L. Lyle, Jr. as co-executors of the will, and named Thomas as co-

executor in the event that Joseph became unwilling or unable to serve as executor.  The parties agree that, at the time of Norma's death, Lewis and Thomas were co-executors.

Norma's Will contains numerous specific bequests and devises.  Article VII of the Will governs disposition of the residue of Norma's estate:

> All the rest, residue, and remainder of my property of every kind and description, and wherever located, including any lapsed or void legacy or devise, after satisfying all the bequests and devises hereinabove set out and after the payment or provision for payment of all administrative expenses and all death taxes as hereinabove directed, I give, devise, and bequeath to the Trustee of a trust agreement between me as Grantor and as Trustee dated July 17, 1992, which is now in existence, to be held, administered, and distributed in accordance with its terms.

> In the event any such property given, devised or bequeathed to the Trustee of such trust agreement is, under the terms of such trust agreement, to be distributed immediately to any beneficiary thereof, outright and free of trust, then such property may be transferred directly to such beneficiary by my Executor, without the necessity of passing through such trust.

Article VII is a pour-over provision.  "[S]ituations in which the testator devises or bequeaths property according to the terms of an inter vivos trust that is in existence and properly referred to at the time the will is executed[,] but which is subject to a reserved power of amendment in the settlor of the trust[,] are most frequently referred to as pour-over provisions."  2 William J. Bowe & Douglas H. Parker,

Page on the Law of Wills § 19.27, at 60-61 (2003). Article VII operates to gather up the entirety of what remained of Norma's estate after all debts, bequests, and devises had been settled, and "pours over" that residuary estate into a trust which was already existing and created by Norma.

One exception to this pour-over provision is supplied by the terms of Article VII. This exception allows for property to go directly to a beneficiary of the trust, without first passing through the trust, if that beneficiary would immediately receive such property under the terms of the Trust Document. We will return to this exception later in order to explain its relevance to the parties' arguments on appeal.

2.    The Norma F. Corr Revocable Trust Document

The trust into which Norma's residuary estate was poured was created by the Trust Document and was titled "Trust A." The Trust Document named Lewis and Joseph L. Lyle, Jr. as successor co-trustees in the event that Norma became unable to serve as trustee, and named Thomas as a successor co-trustee in the event that Joseph became unwilling or unable to serve as trustee. The parties agree that, at the time of Norma's death, Lewis and Thomas were co-trustees.

Because Norma's husband predeceased her, Article IV, Sections (B)(3) through (B)(6) of the Trust Document governed disposition of the trust's assets. Sections (B)(4) and (B)(5)

of Article IV are not relevant to this appeal, and we need only review Sections (B)(3) and (B)(6).

Article IV, Section (B)(3) of the Trust Document provides:

3. To the extent not appointed by [Norma's] husband, upon the death of [Norma's] husband, the then remaining trust assets, if any, shall be divided, per stirpes, into equal shares, one share for each child of [Norma] then living and one share for each child of [Norma] then deceased with surviving issue.

Each living child of [Norma] shall then be entitled to request and receive, outright and free of trust, his or her entire share. Prior to final distribution, the Trustee shall pay to or apply for the benefit of each of [Norma's] living children the entire income of his or her respective share and so much of the principal as the Trustee deems appropriate for his or her support, maintenance, education (including college and graduate school), and medical care.[1]

Section (B)(3) provides that any property poured over into Trust A shall be divided per stirpes[2] among the total number of Norma's living children or, if deceased, Norma's children who had living issue at the time of the per stirpes division. Norma had three children, all living, when Norma's residuary estate poured over into Trust A and became subject to the per

---

[1] In this opinion, paragraph breaks have been added to some quotations from the operative documents.

[2] "Per stirpes means proportionately divided between beneficiaries according to their deceased ancestor's share." Sheppard v. Junes, 287 Va. 397, 406 n.4, 756 S.E.2d 409, 413 n.4 (2014) (internal quotation marks and alterations omitted).

8

stirpes division: Lewis, Nancy, and Patricia. Thus, any such property would be divided equally into three shares.

Article IV, Section (B)(6) of the Trust Document provides in relevant part:

> Notwithstanding anything herein to the contrary, upon the second to die of [Norma] and her husband, [Norma's] son, Lewis S. Corr, Jr., is hereby granted and given the exclusive right and option to purchase[:]
>
> (i) any or all shares of stock in Capitol Foundry of Virginia, Inc., or any successor entity thereto, which Trust A herein may own, and
>
> (ii) any or all interests Trust A may own in [certain real property].
>
> . . . .
>
> The option shall be exercised by written notice delivered to the Trustee within ninety (90) days of the date of the second to die of [Norma] and her husband. If not exercised by such date, the option shall then terminate and expire.
>
> Within sixty (60) days of such exercise, at a mutually acceptable date, time and place (the "Settlement Date"), the Trustee shall convey such property so elected to [Lewis] F. Corr, Jr. by stock certificate . . . in exchange for a downpayment equal to all cash or liquid assets distributable to him pursuant to the terms of Trust A created herein and delivery of an executed promissory note in form acceptable to the Trustee for the balance of the purchase price, to be paid in equal monthly payments of principal and interest amortizing the balance of the purchase price over ten years.

Section (B)(6) of the Trust Document provides that, notwithstanding the per stirpes division of all property poured over into Trust A by operation of Section (B)(3) of the Trust

9

Document, Lewis has an exclusive right and option to purchase all shares of Capitol Foundry stock that Trust A might own. To the extent shares of Capitol Foundry stock are owned by Trust A, this would allow Lewis to purchase and acquire those shares so that his siblings Nancy and Patricia, fellow beneficiaries of Trust A, would not be able to acquire those shares through the per stirpes distribution scheme set forth in Section (B)(3). However, because Lewis's purchase of these shares would put money back into Trust A, that money would be subject to the per stirpes distribution. Thus, Nancy and Patricia would ultimately receive the cash value of their shares of Capitol Foundry stock held by Trust A, just not the shares themselves.

3.   Norma's Estate Planning Documents and Disposition of Norma's Shares of Capitol Foundry Stock

It is important to set forth the distribution scheme of Norma's shares of Capitol Foundry stock if only Norma's estate planning documents governed this case.

The Trust Document does not provide what amount, if any, of Norma's shares of Capitol Foundry stock pour over into Trust A. That document merely provides that if such property is owned by Trust A, it shall be subject to either a per stirpes division by operation of Article IV, Section (B)(3), or

10

Lewis's exclusive purchase option by operation of Article IV, Section (B)(6).

On the other hand, Article VII of Norma's Will provides that her residuary estate shall pour over into Trust A.  This provision means that any shares of Capitol Foundry stock that Norma owned upon her death, not subject to debts, specific bequests, or devises, and therefore forming part of Norma's residuary estate, pour over into Trust A.  See Spinks v. Rice, 187 Va. 730, 740, 47 S.E.2d 424, 428 (1948) ("The essential characteristic of a will is, that it operates only upon and by reason of the death of the maker." (internal quotation marks omitted)).

Reading these two documents together, they operate so that pursuant to Article VII of her Will, Norma's shares of Capitol Foundry stock would pour over into Trust A upon Norma's death, and then, pursuant to Article IV, Section (B)(6) of the Trust Document, Lewis would be able to exercise his exclusive option to purchase those shares.

However, the analysis does not end here because these are not the only two documents relevant to this appeal.  Norma also entered into the Shareholders' Agreement in December of 2002, subsequent to executing her estate planning documents in July of 1992.  This Shareholders' Agreement is a contract separate and distinct from Norma's Will.  Nonetheless, the Shareholders'

11

Agreement could affect the operation of Norma's Will because, even though these two documents were not executed contemporaneously, a will and a contract are instruments that both can relate to the same subject matter – the disposition of property upon death of the owner – and simultaneously embody the testator's intent on that subject.  See McAfee v. Brewer, 214 Va. 579, 581, 203 S.E.2d 129, 131 (1974) (valid contract must have mutual assent of the parties); Roller v. Shaver, 178 Va. 467, 472, 17 S.E.2d 419, 422 (1941) (valid will expresses the testator's intent).

Further, it is clear from the substance of Norma's Will and the Shareholders' Agreement that these two documents operate in harmony.  That is, Norma's Will created a general provision – Article VII - governing the disposition of the general residue of Norma's estate upon her death.  The Shareholders' Agreement, in turn, created a specific provision – Section 3 - governing the particular disposition of Norma's shares of Capitol Foundry stock upon her death.  Norma's shares are property that would fall into Norma's residuary estate because they were not otherwise specifically devised or bequeathed in Norma's Will.  Although the general provision set forth in Norma's Will still has effect, the scope of its operation is necessarily limited to the extent it would govern disposition of Norma's shares of Capitol Foundry stock, which

12

is instead governed by the more specific provision set forth in the Shareholders' Agreement. Cf. Condominium Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condominium, Inc., 281 Va. 561, 573, 709 S.E.2d 163, 170 (2011) ("[A] specific provision of a contract governs over one that is more general in nature.").

It is thus necessary to construe the Shareholders' Agreement to determine how it affects disposition of Norma's shares of Capitol Foundry stock, and whether that instrument is valid and enforceable.

C.    The Shareholders' Agreement

The Shareholders' Agreement was executed by Norma, Lewis, and Nancy as shareholders of Capitol Foundry.  Section 3, titled "Mandatory Sale and Purchase of Stock," provides in relevant part:

> (a)  Death of an Agreeing Shareholder.  Subject to subparagraph (d) hereof, on the death of an Agreeing Shareholder, all of the Shares of Stock owned by such Agreeing Shareholder shall be sold by his personal representative and shall be purchased by the Company or the remaining Shareholders for the purchase price and under the terms set forth in Section 4.  Such offer shall be deemed made and accepted on the ninetieth (90th) calendar day following the date of death, whether actually made and accepted or not.
>
> . . . .
>
> (d)  An Agreeing Shareholder shall have the right to convey or bequeath his/her shares to a member of such Agreeing Shareholder's immediate family.  Such right shall apply during such Agreeing Shareholder's

13

lifetime and shall also apply subsequent to the demise of such Agreeing Shareholder, and then be applicable to such Agreeing Shareholder's executor or administrator.  The term "immediate family" shall be defined as children, spouses, parents and siblings of such Agreeing Shareholder.

In light of the parties' arguments, we address these paragraphs separately.

### 1.   Section 3, Paragraph (d)

We first turn to the exemption provision of Section 3, Paragraph (d) of the Shareholders' Agreement.  To exempt her shares from the mandatory purchase scheme of Section 3, Paragraph (a), Norma was able to "convey or bequeath [her] shares to a member of [her] immediate family."  The term "immediate family" is defined within this paragraph as Norma's "children, spouses, parents and siblings."

### a.   Bequest of Norma's Shares by Trust

The parties agree that Paragraph (d) allowed Norma to bypass the mandatory purchase scheme of Paragraph (a) by bequeathing her Capitol Foundry stock to her children.  The parties disagree whether Paragraph (d) permitted Norma to do so by way of the pour-over provision in Norma's Will, which, as discussed, would convey Norma's shares of Capitol Foundry stock to Trust A for the benefit of Norma's children.

Resolving this dispute requires ascertaining the nature of an inter vivos trust.  An inter vivos trust is not like a

14

corporation, which is "a legal entity entirely separate and distinct from the shareholders or members who compose it." Cheatle v. Rudd's Swimming Pool Supply Co., 234 Va. 207, 212, 360 S.E.2d 828, 831 (1987). So, for example, because a corporation "is a legal person, separate and distinct from the persons who own it," it is "the corporation, as the . . . owner and operator of [a] business, [who] is the person entitled to [the business's] profits." Keepe v. Shell Oil Co., 220 Va. 587, 591, 260 S.E.2d 722, 724 (1979).

In contrast, an inter vivos trust is inseparable from the parties related to it, and the trust does not have separate legal status. Indeed, the term "trust" refers not to a separate legal entity but to "a fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." Restatement (Second) of Trusts § 2 (1959). When such a trust exists, it is not a separate legal entity being referred to,

but a fiduciary relationship between already existing parties, be they real persons or other legal entities.[3]

Those parties have specific titles to denote their various roles within the trust relationship. There is the "settlor," or the "person who creates a trust," the "trustee," or the "person holding property in trust," and the "beneficiary," or the "person for whose benefit property is held in trust." Restatement (Second) of Trusts § 3 (1959); see also Code § 64.2-701. Because there is no trust entity which retains title over property held in trust, a settlor who will not also be a trustee must convey title of trust property to another party in order for a trust to be created. Code § 64.2-719(1). In most trusts,[4] the trustee acquires legal title to the trust property, while "[t]he beneficiary is the equitable owner of trust property, in whole or in part." Fletcher v. Fletcher,

---

[3] We note that the type of trust we refer to in today's opinion – that is, a fiduciary relationship – is different in kind from a business trust. A business trust under the Virginia Business Trust Act, Code § 13.1-1200 et seq., is a separate legal entity like a corporation. See Code § 13.1-1201 (defining "[b]usiness trust"); see also Code § 1-231 ("Whenever the term 'person' is defined to include both 'corporation' and 'partnership,' such term shall also include 'business trust and limited liability company.'").

[4] Nancy invokes the legal principle that, to create a land trust, the settlor must convey "both equitable and legal title in the [trust] property to the trustee." Austin v. City of Alexandria, 265 Va. 89, 95, 574 S.E.2d 289, 292 (2003). Trust A is not a land trust, and therefore this principle does not apply to the facts of this case.

16

253 Va. 30, 35, 480 S.E.2d 488, 491 (1997); see also Curtis v. Lee Land Trust, 235 Va. 491, 494, 369 S.E.2d 853, 854 (1988). Thus, legal and equitable ownership of property entered into Trust A in this case is split between the trustees and beneficiaries.

It would be incorrect, then, to adopt Nancy's argument that because a trust is not defined in Paragraph (d) as a type of "immediate family," Paragraph (d) prevented Norma from bequeathing her shares of Capitol Foundry stock by way of Trust A. Trust A, like all inter vivos trusts, is simply a method to transfer property to another party including, potentially, members of Norma's "immediate family." The question is thus whether Trust A constitutes a mechanism by which Norma bequeathed her Capitol Foundry stock to persons who qualify as members of Norma's "immediate family." If so, disposition of Norma's shares of Capitol Foundry stock by way of Trust A was permitted by Paragraph (d) as an alternative to the mandatory purchase scheme of Paragraph (a).

In undertaking this inquiry, we must determine whether both the trustees and the beneficiaries of Trust A qualified as members of Norma's "immediate family." This is because both a trustee and a beneficiary have a substantial ownership interest in trust property.

17

On the one hand, a beneficiary's equitable title permits the beneficiary to enforce the terms of the trust and to seek judicial remedy in the event of a breach.  See Code § 64.2-792(B) (setting forth methods for a court to "remedy a breach of trust that has occurred or may occur"); Miller v. Trevilian, 41 Va. (1 Rob.) 1, 24 (1843) (holding that, when a trustee, as the legal owner, has "failed to perform his duty," the party retaining equitable ownership has the power to seek redress in a court of equity).

On the other hand, a trustee's legal interest is more than nominal.  A trustee, though "a mere representative," must "attend to the safety of the trust property and . . . obtain its avails for the beneficiary in the manner provided by the trust instrument."  Fletcher, 253 Va. at 35, 480 S.E.2d at 491. A trustee's legal title in trust property allows him to utilize and, if appropriate, dispose of trust property so as to effectuate his duty to administer the trust.  See Code § 64.2-763.  In fact, unless limited by the terms of the trust, a trustee may exercise "[a]ll powers over the trust property that an unmarried competent owner has over individually owned property."  Code § 64.2-777(A)(2)(a).  And, specifically, "[w]ith respect to stocks" such as Norma's shares, a trustee has the power to "exercise the rights of an absolute owner." Code § 64.2-778(A)(7).

In light of the substantial nature of both a beneficiary's and trustee's ownership interest in trust property, disposing of property by trust is a method of conveying such property to both the trustee and beneficiary. As such, although the Shareholders' Agreement did not outright prevent Norma from bequeathing her Capitol Foundry stock by way of Trust A, the Shareholders' Agreement prevented Norma from bequeathing her Capitol Foundry stock by way of Trust A if both the trustees and beneficiaries do not qualify as Norma's "immediate family."

In this case, at the time Norma's shares of Capitol Foundry stock were to pour over into Trust A, all the beneficiaries of Trust A qualified as members of Norma's "immediate family" because each beneficiary – Lewis, Nancy, and Patricia – is either Norma's son or daughter, and therefore qualify as Norma's "children."

However, at the time Norma's shares of Capitol Foundry stock were to pour over into Trust A, all the trustees of Trust A did not qualify as members of Norma's "immediate family." Lewis and Thomas were co-trustees of Trust A at the time of Norma's death. Thomas, being Patricia's husband, is Norma's son-in-law. Because a son-in-law is not one of Norma's "children, spouses, parents [or] siblings," Thomas is not a member of Norma's "immediate family" as that term is defined in Paragraph (d). We therefore hold that, because Norma's method

19

of bequeathing her shares by way of Trust A did not satisfy the terms of Paragraph (d), Paragraph (d) did not exempt those shares from the mandatory purchase scheme of Paragraph (a).

b.    Bequest of Norma's Shares Free of Trust

It is now necessary to construe the exemption in Section VII of Norma's Will.  As previously stated, that exemption permits property that would otherwise pass into Trust A to instead pass directly to the trust beneficiaries if such property would be "distributed immediately to any beneficiary" under the terms of the Trust Document.  Appellees argue that this exemption applies to Norma's shares of Capitol Foundry stock because the beneficiaries of Trust A will "immediately" receive all of Norma's shares.  Consequently, the argument goes, because Section VII of Norma's Will permits Norma's shares to bypass Trust A and be distributed directly to the beneficiaries, and because all the beneficiaries are members of Norma's "immediate family," the disposition of Norma's shares in accordance with the terms of Norma's Will actually falls within the scope of Paragraph (d).

We find this argument unconvincing because it stretches the term "immediate" beyond its ordinary meaning.  "The language of the will itself must be relied on as the chief guide [to understanding how the will operates].  If that language be ordinary and popular, its meaning is to be

20

construed according to its usual acceptation."  Senger v. Senger, 81 Va. 687, 696 (1886).  Immediate means "[o]ccuring without delay" and "instant."  Black's Law Dictionary 866 (10th ed. 2014).  We thus disagree with the appellees because Norma's shares of Capitol Foundry stock could not be instantly distributed to any beneficiary under the terms of the Trust Document.

Unlike most other property poured over into Trust A, which automatically underwent a per stirpes division under Article IV, Section (B)(3) of the Trust Document, Norma's shares were first subject to Lewis's exclusive purchase option under Article IV, Section (B)(6) of the Trust Document.  Lewis's exclusive purchase option thus prevented every beneficiary from "immediately" having their per stripes division of Norma's shares "distributed" to them.  And Lewis himself could not "immediately" have Norma's shares "distributed" to him pursuant to that exclusive option because he was required to first determine how many of the shares he wanted to acquire, purchase such shares, arrange or make payment under a specified payment plan, and act within a set schedule as established by the terms of Section (B)(6).  This is not the type of automatic and instant distribution contemplated by the term "immediate" as that term would apply to most property poured over into Trust A.

21

In sum, Lewis's exclusive purchase option prevented Norma's shares of Capitol Foundry stock from simply passing through Trust A and being "distributed immediately" to any beneficiary. The exemption provision of Section VII of Norma's Will does not apply to Norma's shares, and those shares were required to pass through Trust A by the terms of Norma's Will and the Trust Document. This argument therefore does not alter our conclusion that Norma's estate documents failed to bequeath Norma's shares in a manner consistent with Section 3, Paragraph (d) of the Shareholders' Agreement.

## 2. Section 3, Paragraph (a)

As the exemption of Section 3, Paragraph (d) of the Shareholders' Agreement does not apply, we must construe the mandatory purchase scheme of Section 3, Paragraph (a) of that agreement. We find the language of Paragraph (a) to be clear and unambiguous, and therefore "the intention of the parties must be determined from what they actually say [in the contract] and not from what it may be supposed they intended to say." McCarthy Holdings LLC v. Burgher, 282 Va. 267, 274, 716 S.E.2d 461, 465 (2011) (internal quotation marks omitted). That is, we give effect to Paragraph (a), being the intended "expression of the parties' agreement," the meaning derived from the plain language of that contract provision. White v. Boundary Ass'n, Inc., 271 Va. 50, 55, 624 S.E.2d 5, 8 (2006).

22

Paragraph (a) applies to Norma, Lewis, and Nancy because, in executing the Shareholders' Agreement, they each are an "Agreeing Shareholder."  As an "Agreeing Shareholder," Norma bound her "personal representative[s]" to have "all" of Norma's shares of Capitol Foundry stock "sold."  Moreover, Norma's shares are required to "be purchased by the Company or the remaining [Agreeing] Shareholders for the purchase price and under the terms set forth in Section 4 [of the Shareholders' Agreement]."  Thus, Paragraph (a) requires Norma's personal representatives to sell all of her Capitol Foundry shares to either the Company or the remaining shareholders upon Norma's death.[5]

Appellees argue that this provision of the Shareholders' Agreement is unenforceable because it contains an uncertain material term.  "It is well settled that a contract must be complete and certain[,] and that the essential elements . . . must have been agreed upon[,] before a court . . . will

---

[5] Norma is deceased, and Lewis and Thomas are Norma's personal representatives as executors of her estate.  See Bartee v. Vitocruz, __ Va. __, __, 758 S.E.2d 549, 552 (2014).  In administering Norma's estate, Lewis and Thomas must dispose of Norma's shares consistent with the Shareholders' Agreement, as such contractual obligations do not "involve any special skills or training" and therefore Norma's death "does not discharge [those] obligation[s]."  Firebaugh v. Whitehead, 263 Va. 398, 405-06, 559 S.E.2d 611, 616 (2002); see also Code § 64.2-514 ("Every personal representative shall administer, well and truly, the whole personal estate of his decedent.").

specifically enforce the contract."  Roles v. Mason, 202 Va. 690, 692, 119 S.E.2d 238, 240 (1961).  Appellees argue that Paragraph (a) is uncertain when, as in this case, disagreement exists about which parties will purchase Norma's stock, as well as the quantities of stock each party would purchase.

We reject this argument.  "The law does not favor declaring contracts void for indefiniteness and uncertainty, and leans against a construction which has that tendency." Reid v. Boyle, 259 Va. 356, 367, 527 S.E.2d 137, 143 (2000) (internal quotation marks omitted).  We do not "permit parties to be released from the obligations which they have assumed if this can be ascertained with reasonable certainty from language used, in light of all the surrounding circumstances."  Id. Such surrounding circumstances include other provisions of the contract, as we "construe [a] contract as a whole."  Schuiling v. Harris, 286 Va. 187, 193, 747 S.E.2d 833, 836 (2013).  Thus, we review the entire Shareholders' Agreement to determine whether the contracting parties established a mechanism to provide certainty to this potentially indefinite term.

Section 14 of the Shareholders' Agreement, titled "Survival of Benefits," establishes such a mechanism.  Section 14 provides, in pertinent part:

Any covenant or agreement made by the Company herein shall also constitute a covenant and agreement by the Agreeing Shareholders to vote the Shares of the Company held by them to cause the Company to perform any such covenant or agreement.

The Company, through its shareholders, agreed to purchase Norma's shares of Capitol Foundry stock upon her death in Section 3, Paragraph (a) of the Shareholder's Agreement. By way of Section 14 of that agreement, Lewis, Nancy, and Norma, as "Agreeing Shareholders," have an overriding obligation to ensure that the Company performs that agreement. Thus, in the event that the Company, Lewis, Nancy, and Norma's executors cannot agree as to who will purchase Norma's stock, and in what quantities, Section 14 obligates Lewis, Nancy, and Norma's executors to vote their respective shares of the Company so that the Company will perform its agreement by purchasing all of Norma's stock.

In this manner, Section 3, Paragraph (a) of the Shareholders' Agreement is not uncertain as to who will ultimately purchase Norma's shares, and in what quantity. Paragraph (a) certainly allows for an array of options as to what might happen: either the Company, Lewis, or Nancy, or any combination thereof, may make such a purchase, and in whatever quantity they determine. But Section 14 provides definiteness to this term in the event of disagreement by requiring the

Agreeing Shareholders to vote their shares to have the Company purchase all of Norma's stock.

D.   Proceedings on Remand

The resolution of the dispositive issues in this appeal does not resolve the case itself.  Nancy's amended complaint sought relief in the form of an order compelling Norma's executors to tender Norma's 30.6 shares to Capitol Foundry and herself.  Today, although we agree with Nancy that the Shareholders' Agreement governs disposition of Norma's shares, we do not enter the relief Nancy seeks in light of how Section 3, Paragraph (a) of that agreement actually operates.

We note that Paragraph (a) allows for the parties to first attempt to come to an agreement how such a disposition shall occur.  We will remand this case to the circuit court so that the parties may, in the first instance, attempt to resolve who will purchase Norma's 30.6 shares, and in what quantities.  If the parties cannot reach such an agreement, Section 3, Paragraph (a) and Section 14 of the Shareholders' Agreement require the shareholders, including Norma's executors on Norma's behalf, to ensure that Norma sells all 30.6 of her shares to Capitol Foundry.

### III. Conclusion

For the aforementioned reasons, we will reverse the circuit court's judgment that Norma's estate documents govern

disposition of Norma's shares of Capitol Foundry stock, and that Lewis properly exercised his exclusive purchase option under the Trust Document.  We hold that the Shareholders' Agreement governs disposition of Norma's shares of Capitol Foundry stock, and will remand this case for further proceedings consistent with this opinion.

Reversed and remanded.

JUSTICE McCLANAHAN, dissenting.

The majority opinion elevates form over substance to hold that Norma Corr's inter vivos trust violates the terms of the Shareholders' Agreement.  "The presumption in commercial contracts is that the parties were trying to accomplish something rational.  Common sense is as much a part of contract interpretation as is the dictionary or the arsenal of canons." Fishman v. LaSalle Nat'l Bank, 247 F.3d 300, 302 (1st Cir. 2001) (internal citation omitted).

Under the terms of Section 3, Paragraph (d) of the Shareholders' Agreement, Norma could have bequeathed her Capitol Foundry of Virginia, Inc. (Capitol Foundry) stock to her three children, subject to an option to purchase by Lewis, by express provision in her will.  The majority opinion concludes that Norma nevertheless violated Section 3, Paragraph (d) of the Agreement by her efforts to accomplish that exact

27

result through execution of estate planning documents commonly used for transferring estate assets to the decedent's beneficiaries, i.e., a "pourover" will and inter vivos trust.

The "apparent object of the parties" to the Shareholders' Agreement, as indicated in Section 3, Paragraph (d), was to limit ownership of Capitol Foundry stock to family members, as defined therein, which, of course, included Norma's three children. Flippo v. CSC Assocs. III, L.L.C., 262 Va. 48, 64, 547 S.E. 2d 216, 226 (2001). The Agreement, however, placed no restrictions on the method used for effecting such transfer of ownership. Through her inter vivos trust, Norma provided for the transfer of actual ownership of her Capitol Foundry stock to her three children, subject to Lewis' option to purchase. Indeed, such a trust is "a device for making dispositions of property" to such beneficiaries, not trustees. Collins v. Lyon, Inc., 181 Va. 230, 246, 24 S.E.2d 572, 579 (1943). Accordingly, at the time of the momentary interim transfer of the stock from Norma's estate (where it is being held) to the trust, the trustees would hold no more than "bare" legal title to the stock. See Restatement (Third) of Trusts § 42 cmt c (2003) ("[A] trustee . . . ordinarily takes only what is generally described as the 'bare' legal title to the trust property."); see also Fletcher v. Fletcher, 253 Va. 30, 35, 480 S.E.2d 488, 491 (1997). That is, at no time would the

trustees, solely in that capacity, possess any beneficial ownership interest in the stock. See id. (a trustee is a "mere representative whose function is to attend to the safety of the trust property and to obtain its avails for the beneficiary in the manner provided by the trust instrument" (quoting George G. Bogert, The Law of Trusts and Trustees § 961, at 2 (rev. 2d ed. 1983)).

No part of this transaction, based on a reasonable reading of the Shareholders' Agreement, should be deemed a violation of the Agreement. See Hairston v. Hill, 118 Va. 339, 342, 87 S.E. 573, 575 (1916) ("[A]n unreasonable construction is always to be avoided."). Therefore, I would affirm the circuit court's holding that the will, inter vivos trust and Shareholders' Agreement are not in conflict, and that the trust provision giving Lewis an option to purchase Norma's Capitol Foundry stock is thus enforceable.

Because I reach this conclusion, I would proceed to address the additional question presented by appellant as to whether the "effectiveness" of Lewis' exercise of the option to purchase under the terms of the trust was properly before the circuit court. I would answer that question in the affirmative. In their counterclaim, the executors and trustees specifically requested that the circuit court "construe and interpret the [w]ill, the [t]rust, and the [Shareholders']

29

Agreement so as to determine the rights of the parties named herein with regard to [Lewis'] [s]tock [o]ption and subparagraph 3(a) and 3(d) of the Agreement."

For these reasons, I dissent.